**STATE of Missouri, Respondent,**

v.

**Julian Melvin FORBUS, Appellant.**

No. 47673.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Charles M. Shaw, Clayton, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

By an amended information filed in the Circuit Court of St. Louis County on January 12, 1959, defendant was charged with the offense of uttering a false and forged money order with intent to defraud, in violation of Section 561.011 RSMo 1949, V.A.M.S. (to which revision all statutory references herein are made unless otherwise indicated). The information also invoked the provisions of the Second Offense Act (prior to its amendment by S.B. 117 in 1959, effective August 29, 1959) by alleging his prior conviction of four felonies, his imprisonment in the penitentiary in accord with the sentences imposed in each case and his lawful discharge therefrom upon compliance with said sentences. Upon trial to a jury in January, 1959, he was found guilty of the offense charged, with the further finding that he had been priorly convicted of one or more of the felonies alleged in the information. In accordance with the provisions of §§ 561.011 and 556.-280 (prior to its amendment) the jury assessed his punishment at imprisonment in the state penitentiary· for a term of ten years. He has appealed from the judgment rendered in accordance with the verdict, but has not filed any brief. We, therefore, review the valid assignments of error set forth in his motion for new trial, as required by S.Ct. Rule 27.20 and

the essential portions of the record as required by S.Ct. Rule 28.02, 42 V.A.M.S.

The evidence warrants a finding of the following facts: At the times herein mentioned, Consumer's Money Order Corporation of America, herein referred to as "Consumer's", issued for sale, through various agents, instruments designated in the record as "money orders". When sold and validated by the agent, these orders, in substance, constitute an order drawn by Consumer's on its depository (in this case, Northwestern Bank and Trust Company, St. Louis, Missouri) to pay to the payee therein named, or his order, the amount shown on the face thereof. On and prior to June 7, 1958, James C. Williams, doing business as Williams Sav-Way Market, at 4201 Laclede, in the City of St. Louis, was an agent for Consumer's in the sale of these orders. They were serially numbered and issued to him in booklets, together with a rubber validating stamp which he would imprint upon an order sold

by him and affix his initials following the imprint. The stamp furnished to Mr. Williams read "Williams Sav-Way Market 949", the figures being his agency number. Among the money order blanks so furnished to him and in his possession at the close of his business establishment on the evening of Saturday, June 7, 1958, was money order blank bearing No. SL 3–844014. Sometime during that night the market was burglarized and the booklet containing the aforesaid numbered money order form and the stamp were stolen therefrom. When stolen, the order form had not been filled in or validated.

On Saturday, July 12, 1958, defendant entered and purchased from Schramm's Hardware Store in St. Louis County, owned by Paul Schramm, certain merchandise in the approximate amount of $5, in payment of which he tendered Mr. Schramm the aforesaid numbered money order blank, which then had been filled in and ostensibly validated to read as follows:

"Consumer's Money Order Corp. of America
SL 3–844014

Northwestern Bank and Trust Co.
St. Louis, Mo.
Pay the Sum of       Eighty Five Dollars    . . . . . . . . . . . . . Cents    $85.00
Williams Sav-Way Mkt. 949, E. Siegel, Treasurer
Agent or Sub-Agent (Valid only when Countersigned by Agent)

Or Order

Payable to Julian M. Forbus
Sender    Ralph Gordon
1620 Missouri                           Date 7/11/58
                                        St. Louis, Mo."

———◆———

Mr. Schramm refused to accept the order until defendant furnished "identification". Defendant left, saying he would do so. Shortly thereafter he returned with his automobile driver's license. Mr. Schramm accepted the order after defendant endorsed his name on the back thereof and delivered to defendant approximately $80 in money and approximately $5 worth of merchandise. Mr. Schramm, in due course,

deposited the order in his bank but, upon presentation to Consumer's depository, payment was refused. Defendant was arrested on July 27, 1958, and was identified by Mr. Schramm at the police station as the person who delivered the money order to him.

George H. Voelertsen, a duly qualified expert in the examination of handwriting, testified that he had compared known speci-

mens of defendant's handwriting with the handwritten endorsement on the back of the order and said that he was reasonably sure that the endorsement on the back of the order was in the same handwriting as the known specimens of defendant's handwriting submitted to him for comparison.

Defendant, testifying in his own behalf, admitted the four felony convictions pleaded in the information, his imprisonment in the penitentiary therefor and his lawful discharge from imprisonment upon compliance with the sentences imposed upon him; admitted endorsing and delivering the money order and the receipt of the merchandise and $80 in money as detailed by Mr. Shramm; admitted that following his arrest he furnished the police with the specimens of his handwriting which, in turn, were furnished by the police to witness Voelertsen for comparison with the endorsement of his name on the back of the order; admitted that he did not know any one by the name of Ralph Gordon, whose name appeared on the face of the order as the sender thereof; denied any knowledge of any of the writing appearing on the face of the order; denied any knowledge of Williams Sav-Way Market; and stated that in July, 1958, he worked for his brother in the Elite Cafe, operated by the latter at 1819 Park.

On cross-examination, he admitted that in addition to the felonies alleged in the information he had been convicted in a Federal court in 1954 and imprisoned under an indictment of four counts involving falsely made securities and tools to be used in counterfeiting, and that he was discharged from imprisonment under those convictions in October, 1957; admitted that after his arrest for passing the money order for which he was on trial that he may have told the police officers that he did not know whether he had "done it" because he had been drinking.

On redirect examination, he, for the first time, testified that he had received the money order from his brother, James For-bus, who ran the Elite Cafe, in payment of wages at $40 per week; and that his brother lived on Lafayette Street, but he could not remember the number. James Forbus did not testify.

■ Defendant's first assignment is that the court erred in permitting State's witness *Paul Schramm* to testify to the fact that his store had been burglarized and that the money order was stolen from *Schramm's Hardware Store*. Actually, there was no such testimony. But, assuming that the defendant meant to refer to witness Williams and the Sav-Way Market, the contention is devoid of merit. Defendant, as the State's evidence shows, was in possession of a money order form stolen from Williams Sav-Way Market and which, following the theft thereof, had been falsely altered so as to import on its face a validly issued instrument. Those facts were material in establishing that the money order was not issued to defendant, was forged, and that defendant, with intent to defraud, uttered it knowing it to be forged. The assignment is overruled.

■ The second assignment is that the court erred in permitting witness Voelertsen to give his opinion that the endorsement on the back of the money order was in defendant's handwriting. Prior to the testimony of Voelertsen, there was nothing to show that defendant would admit that he had endorsed the order. The record shows that defendant's counsel vigorously cross-examined Voelertsen in an effort to discredit his testimony as to the genuineness of defendant's endorsement on the back of the order; and it was not until defendant testified in his own behalf that the admission was made. In any event, however, when defendant did admit his signature, the admissibility of Voelertsen's testimony became immaterial. The assignment is overruled.

■ The third assignment is that the court erred in refusing defendant's motion for acquittal made at the close of all of

the evidence. No reason is advanced in support of the contention and certainly we conceive of none. A submissible case was clearly made. Section 561.011; State v. Garrison, Mo., 305 S.W.2d 447. The assignment is overruled.

■ Assignments four and five complain of Instructions 1 and 3 upon the ground that in the closing phrase of Instruction 1 the court directed the jury, to wit: "and unless you so find all the facts to be, you will acquit the defendant"; and in the closing phrase of Instruction 3 the court directed the jury, to wit: "if you believe such facts and circumstances have been proved before you", etc. Defendant says that in so closing the instructions the court erroneously omitted the requirement that the jury be directed that it must find the facts therein hypothesized beyond a reasonable doubt before it could return a verdict against defendant. Instruction 1 was the main verdict-directing instruction given in behalf of the State. It opened by expressly requiring the jury to find the facts therein hypothesized beyond a reasonable doubt as a condition to finding him guilty of the crime charged. Instruction 3 reads as follows: "The intent with which the act or acts of the defendant were done, is one of the facts for you to determine from all the evidence in this case. This intent need not be proved by direct and positive testimony; in the absence of such testimony it may be inferred by you from all the facts and circumstances in evidence having reference to and bearing upon the question of intent, if you believe such facts and circumstances have been proved before you during the trial of this case." In connection with Instructions 1 and 3, the court also gave Instruction 5 which, in conventional form, advised the jury as to the presumption of defendant's innocence; that the presumption continued until overcome by evidence establishing his guilt beyond a reasonable doubt; and that if the jury had a reasonable doubt of his guilt, it should acquit, etc. When 1 and 3 are considered in connection with 5, as they must be, it is clear that the jury was fully advised of the necessity of finding beyond a reasonable doubt each and every fact hypothesized in the instructions before finding defendant guilty. The assignments are overruled.

The information duly charges defendant with the crime of which he was convicted. He was personally present and represented by competent counsel throughout all stages of the trial and after-trial proceedings. The verdict is in due form and the punishment is within the limits fixed by law. Allocution was granted and the judgment and sentence imposed is in accord with the verdict and constitutes a valid and binding judgment.

The judgment is affirmed.

All concur.