**STATE of Missouri, Respondent,**

v.

**Lewis Sylvester FEASEL, Jr., Appellant.**

**No. 48275.**

Supreme Court of Missouri,
Division No. 1,
March 13, 1961.

John J. Slaton, Clayton, for appellant.

John M. Dalton, Atty. Gen., James B. Slusher, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

Defendant has appealed from a sentence of imprisonment of twelve months in the county jail imposed upon him in accordance with the verdict of a jury returned in the Circuit Court of Franklin County finding him guilty of manslaughter in causing the death of Dona Overall by his culpable negligence in the operation of a motor vehicle. Sections 559.070 and 559.140 RSMo 1949 (Id. RSMo 1959) V.A.M.S. ·Although represented by counsel in the trial court, no brief has been filed in his behalf in this court. We, therefore, review the valid assignments of error set forth in his motion for new trial, as required by S.Ct. Rule 27.20, and the portions of the record required by S.Ct. Rule 28.02, Vol. 1, V.A. M.R.

The first six assignments are general. They complain respectively that the verdict and judgment are (1) "against the law"; (2) "against and contrary to the evidence"; (3) "against the law under the evidence and law as applied to the evidence"; (4) "against the weight of the evidence"; (5) "a result of bias and prejudice and improper conduct on the part of the jury to the defendant"; and (6) "for the wrong party." They present nothing for review. S.Ct. Rule 27.20; State v. Russell, Mo.Sup., 324 S.W.2d 727, 733; Cases collected in Vol. 9–A Mo.Dig., Criminal Law,

Assignments 8 and 12 challenge the sufficiency of the evidence to support the verdict, alleging in essence that there was no evidence showing that defendant was the driver of the vehicle causing the death of Dona Overall nor was there any evidence that defendant was guilty of culpable negligence. In determining those questions, we consider as true the evidence favorable to the State and all favorable inferences to be drawn therefrom and reject all evidence contrary to and in conflict with the favorable evidence. State v. Hill, Mo.Sup., 328 S.W.2d 656, 659; State v. Archer, Mo.Sup., 328 S.W.2d 661, 665.

On the night of October 16, 1959, defendant, Lewis Sylvester Feasel, Jr., of Chesterfield, Missouri, drove his father's Studebaker pickup truck to the City of St. Clair in Franklin County. There Wayne Hawkins and Dona Overall got into the truck. As they rode about the streets and vicinity of St. Clair, the truck, in which they were then riding on "Old" Highway 66, came into collision with a Ford automobile at the intersection of Old 66 with Highway 47. Dona Overall and Wayne Hawkins

were thrown from the truck and instantly killed. None of the occupants of the Ford automobile, consisting of five teen-age students, was seriously injured. Defendant testified at the trial that Wayne Hawkins was driving the truck when the collision occurred. The truth of that testimony became one of the principal issues in the case.

"Old" Highway 66 extends in an east-west direction through the City of St. Clair. "New" Highway 66 also extends east-west and lies approximately 300 feet to the north of Old Highway 66. Highway 47, a north-south highway, as it approaches and extends southward through the City of St. Clair, overpasses New 66 by means of a viaduct and then, some 300 feet south of the viaduct, intersects and crosses Old 66 at grade. Old and New Highways 66 generally parallel each other for a distance of 1.9 miles as they extend eastward (beyond the city limits of St. Clair) from their intersections with Highway 47. There they merge or are joined in such a manner that vehicles travelling eastward from St. Clair on either Old or New 66 may turn back westward on the other.

The evidence adduced in behalf of the State tended to show: About 11:00 p. m., on October 16, 1959, a clear, moonlight night, State Highway Patrolman A. J. Boschert stood on a sidewalk by Frenchey's Service Station, located on the south side of New 66 about .4 mile east of the point where Highway 47 viaduct crosses over it. At that moment he saw a black Studebaker pickup, with its wheels spinning so rapidly as to throw gravel to its rear and side, come through the service driveway at Frenchey's, enter upon and proceed at a rapid rate of speed eastward on New 66. He also saw the name "Feasel" on the right side of the truck bed and noticed that at least three persons were riding in the truck. The manner in which the truck wheels threw gravel and the speed at which it entered the highway and went eastward caused him to get into his car (parked at Frenchey's) and go

in pursuit. At that time there were lights showing on the rear of the truck, but he saw no headlights. The truck disappeared momentarily from his view. As he approached within about .2 of a mile of the merging point of Old and New 66, he looked to his right and saw the truck about 300 feet to the south of him, proceeding westward on Old 66. At that time neither its front or rear lights were on. In order to make the turn back westward, the patrolman was forced to slow the speed of his car, which had theretofore attained 80 to 85 miles an hour. After turning westward, the truck did not come within his sight until he reached the scene of the collision, although he again attained a speed of 80 to 85 miles an hour.

When the patrolman approached the grade intersection of Old 66 and 47, he saw dust in the air, then saw a white Ford automobile (in which the students had been riding). It was sitting with its left rear fender against a stop sign at the southwest corner of the intersection, which had been "pushed over" by the Ford. (There are stop signs at each of the four corners of the intersection.) He next saw the Studebaker pickup truck, turned over on its side 276 feet west of the stop sign on the west side of the intersection. When defendant first got out of the truck he said to the patrolman, "I have done it now." He was placed under arrest and directed to sit in the front seat of the patrolman's car. The patrolman next discovered the body of Wayne Hawkins a few feet from the side of the truck and the body of Dona Overall lying in the ditch adjacent to the highway, underneath the front wheels of the truck, which were across the ditch. The hair and scalp of her head were a short distance beyond. The truck was facing south. It was damaged all over; one of its wheels and its sunshade were found across the pavement. The Ford car had been struck near its left front end.

Defendant had a cut on his head and the patrolman had him taken to the hospital at Washington, Missouri. Within less than an hour, the patrolman talked with defend-

ant at the hospital. Defendant was asked questions, in answer to which he gave his age as 22, his residence as Chesterfield, and his place of employment as a country club in St. Louis County. When asked by the partolman for a statement to be placed in the accident report, defendant said he was speeding and ran a stop sign, did not see the other car and was going 70 miles an hour.

The Ford car with which the Feasel truck collided was driven by Travis Hanneken; it belonged to Travis' father. In the front seat with Travis was Darlene Flora, in the rear seat were two girls and one boy. All were teen-age students and were returning from Union, where they had gone following an inter-school volley ball game. On the way home they had stopped at Key's Restaurant where they ate hamburgers and had soft drinks. On arrival at St. Clair, they came south on Highway 47 across the viaduct over New 66 and thence on southward to the intersection of 47 with Old 66, where they stopped at the stop sign on the northeast corner for traffic southbound on 47. The lights of the Ford were on. Both Travis and Darlene, sitting in the front seat, looked to the west and east, both of which views were unobstructed, and could see nothing coming from either direction, whereupon Travis drove the Ford into the intersection, where it was struck on the left front by the truck, which none of them saw prior to the instant of collision. The front end of the Ford was thrown northward, causing the rear end to be "flipped" to the south. "Hubcaps and things" went through the air and the car slid across the pavement and came to rest against the stop sign at the southwest corner of the intersection. One of the lights on the Ford continued to burn after the collision. There were no lights burning on the truck as it came to the intersection or after the collision.

William Ennis and Clyde Austin were walking toward the intersection of Old 66 and 47 when they heard and saw the collision occur and ran to it. Ennis saw defendant get out of the truck from the

driver's side and, as he did so, Ennis heard him say, "Son-of-a-bitch, what did I do?"

Defendant, aged 22 years, testified: He lives with his mother and father at Chesterfield and works on a golf course. On the night of the collision, he drove his father's pickup truck to St. Clair. In driving around town looking for Wayne Hawkins, he came upon Wayne and Dona Overall riding in Wayne's Chevrolet. Defendant got in the Chevrolet with Wayne and Dona and they rode around for about 45 minutes at which time they transferred to defendant's truck, as Wayne "was about out of gas." Wayne started driving the truck. They went by Frenchey's Service Station to get gas for the truck. When they got there, Wayne drove into the station like he was going to stop and went right on. They noticed no one pursuing them. After proceeding easterwardly on New 66, they turned on a side road "that turns right back on itself." Wayne turned the lights out. After some argument lasting 15 or 20 seconds, he turned them back on. They went on down the road and "something hit us." Defendant was "fooling with the radio" when that happened. The truck speed at that time was about 40 miles an hour. Defendant "believes" the lights were on after the collision occurred. His recollection thereafter is hazy; he recalls the hospital and being in a wheel chair but had no recollection of talking to Patrolman Boschert, nor of talking to his mother, who visited him about 2:30 a. m., following the collision. On cross-examination, defendant admitted having pleaded guilty before the magistrate court in Franklin County for careless and reckless driving at another time and at another highway intersection.

The evidence clearly supports a finding that defendant was operating the truck at the time of the collision. The testimony that he was seen leaving the driver's side of the truck shortly after it came to rest across the highway and that he stated, "I have done it now," and "Son-of-a-bitch, what did I do?", we think, in and of itself,

justifies a finding that he was the operator of the truck. There is also the testimony of the patrolman that defendant, when interviewed at the hospital, said he was "speeding", "ran a stop sign", "didn't see the other car and was going 70 miles an hour." It is not necessary to the conviction of defendant that he had an actual intent to harm someone, if his conduct is such as to indicate his utter disregard for human life. State v. Duncan, Mo.Sup., 316 S.W.2d 613, 617–618 [5, 6]. We hold that the evidence above recited, considered with all of the other facts and circumstances shown in this case, made a submissible issue of defendant's guilt.

Assignments 9, 10 and 11 of the motion for new trial complain of the admission of the following testimony of the patrolman:

■ (9) That defendant made a "confession" (the verbal statement given the patrolman) at the hospital after the collision, because the State had not offered at the time of the objection to such testimony any evidence tending to show "that defendant was guilty of culpable negligence * * *" or that he was driving the truck when the collision occurred. Suffice to say that such evidence was adduced during the trial. The order in which this evidence was adduced was not material. State v. Thompson, 333 Mo. 1069, 64 S.W.2d 277, 282 [3, 4].

(10) With reference to the patrolman giving "chase because by the trooper's own admission there was no excessive speeding or careless and reckless driving by the defendant during the alleged chase * * *." We find no such admission in the record. There was, as we have herein stated, sufficient evidence of that fact. The assignment is without merit.

(11) With reference to the "chase" and the "confession" allegedly obtained from the defendant at the hospital "because the State offered no evidence prior to the admission of the testimony * * * and no evidence after the submission of the testimony to lend support to, or corroborate said alleged confession * * *." This assignment is simply a combination of assignments 9 and 10, which, when considered singly, we have ruled adversely to defendant. Joinder of them adds nothing to their merit.

■ The final assignment (No. 7) is that Instruction No. 1 was prejudicially erroneous, in that it (1) confused and misled the jury; (2) failed to cover the whole case and to direct the verdict; (3) failed to hypothesize facts necessary to an intelligent decision of the facts and issues; (4) authorized the jury to find for the plaintiff, without making a finding of facts necessary to sustain this verdict; (5) was not supported by the evidence in the case; (6) gave the jury a roving commission; (7) was vague and ambiguous and gave the jury a roving commission to find for the plaintiff without any limitation thereon to find for the defendant; and (8) did not cover the entire case nor the defendant's theories of the case and therefore is prejudicial and illegal. This assignment completely fails to point out in what way or manner the instruction was deficient or otherwise erroneous in any of the respects ascribed to it. It, therefore, presents nothing for review. S.Ct. Rule 27.20. However, we have no hesitancy in holding that the instruction directs a verdict of defendant's guilt of manslaughter only if the jury shall find beyond a reasonable doubt the therein meticulously hypothesized essential facts pleaded in the information and supported by the evidence adduced in behalf of the State. The assignment is overruled.

The information is in approved form. State v. Renfro, Mo.Sup., 279 S.W. 702, 703; State v. Cox, Mo.Sup., 333 S.W.2d 25, 31. Defendant and his counsel were personally present throughout all stages of the trial and after-trial proceedings. The verdict is responsive to the issues and the punishment assessed is within the limits prescribed by said Section 559.140. Defendant

was granted due allocution and the judgment and sentence are in due form of law.

The judgment is affirmed.

All concur.