**STATE of Missouri, Respondent,**

v.

**Reggie Allen BALDWIN, Appellant.**

No. 48967.

Supreme Court of Missouri.

Division No. 2.

June 11, 1962.

Williams & Miller, Springfield, for appellant.

Thomas F. Eagleton, Atty. Gen., Joseph G. Stewart, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

BOHLING, Commissioner.

Reggie Allen Baldwin appeals from a judgment imposing a sentence of seven years' imprisonment for subornation of perjury. §§ 557.040, 557.050, 557.020. Statutory references are to RSMo 1959 and V.A.M.S. He questions the submissibility of the State's case, the admission of certain evidence, the propriety of an instruction, and remarks of the State's attorney in the closing argument.

Raymond Baldwin, defendant's son, and Tommy Burton were charged with breaking into the Westport school. Raymond's case was tried in the Circuit Court of Greene County, Division One, Honorable William R. Collinson, presiding, on January 17, 1961. He contended he was not at the burglary, did not commit it. He was represented by two attorneys of Springfield, Missouri. Burton, who had pleaded guilty, testified that Raymond and he committed the burglary between 7:00 and 8:00 p. m. on Sunday, March 13, 1960. There was testimony and the jury were instructed on Raymond's defense of an alibi. The jury acquitted Raymond.

Mrs. Helen Smith, who was 19, the mother of two infant daughters, separated from her husband and later divorced, was sworn and testified on behalf of Raymond. Raymond and she dated. Witness kept a diary. Refreshing her memory from entries in the diary, she testified, material here in support of Raymond's alibi defense, that Raymond, on March 11, 1960, asked her to go out with him on Sunday; that Raymond and she went to the home of Mr. and Mrs. Warren Colson between 4:00 and 4:30 p. m. Sunday, March 13, 1960; that they had supper at the Colsons', at which chicken was served, and played cards; that Raymond consumed quite a bit of beer, got drunk and passed out about midnight on the divan; that someone removed his shoes; that Mr. Colson took her home about 1:00 a. m. on the 14th; and that Raymond had not left the Colsons' home from the time they arrived until she left.

The cross-examination developed that the diary entries of March 13 had been written in different ink; that part of the entry appeared under "March 14," with the "14" scratched out; and that she never mentioned this testimony to any public official and first disclosed it from the witness stand.

At this, the subornation trial, the following evidence was adduced:

Mrs. Colson testified that right after the first of 1961, defendant and Raymond drove Mr. and Mrs. Colson to the attorneys' office, where they held a conference. At that conference the Colsons' testimony was to be that Raymond was at their house the night of the burglary, Sunday, March 13, 1960, had supper, played cards, got drunk, passed out, and Mr. Colson put him to bed on the divan. Defendant was present and could hear what was said. Neither Helen Smith nor chicken for supper was mentioned.

Mrs. Smith testified as follows: She first dated Raymond about the first of June, 1960. She was asked to be a witness that Tommy Burton's reputation for truth was bad, but did not commit herself one way or the other. She talked to defendant by telephone early in the morning of January 10, 1961, about a week before the trial, and defendant said Raymond wanted her to be a witness for him and for her to go to the garage and talk to Raymond. Joan Baker, Mrs. Smith's sister-in-law, took Mrs. Smith to a garage on Highway 66 West. Mrs. Smith went in the garage and talked to Raymond. She came out and Mrs. Baker took her to defendant's home. Mrs. Smith went in the house and talked to defendant. She was in defendant's home for twenty to thirty minutes. Mrs. Smith testified defendant told her she was to testify that she and Raymond were at Warren Colson's house; that they played cards and things; that Raymond got drunk and passed out on the divan. She told him she could not do it. He said he thought she better and, when she asked why, said Raymond would talk to her later. She testified Raymond thereafter talked to her on Thursday night, on Sunday, and on Monday before the trial. She then testified that at the garage Raymond said he wanted her to testify at his trial, and for her to go to his house and talk to his father; and that Mrs. Baker then drove her to defendant's home. Raymond came to the "Sky Ranch" Thursday evening. She went out, got in his car, and "asked him about it." He said he didn't know too much about what we did and would have to ask Mr. Colson. She told him she couldn't swear to all that in court. "And he said, well, I better, if I didn't he would make sure something happened to my two girls." She later talked to him in her home before the trial, and he told her they were supposed to have been over at Mr. and Mrs. Colson's between 4:00 and 4:30; they played cards, had chicken for supper; he got drunk and passed out on the divan around midnight, and Mr. Colson took her home between 12:30 and 1:00 a. m. They talked about remembering the date, and she mentioned she kept a diary and could say she had it in her diary. Raymond agreed to this.

The day before Raymond's trial, Raymond and Mrs. Smith went by for the Colsons, then for defendant at his home,

and took them to the attorneys' office. · Mrs. Colson testified that she then first met Mrs. Smith. On the way over, Mrs. Colson was first told that they had chicken for supper on March 13, 1960. She did not remember that defendant said this but he heard it. All those named were at this conference with the attorneys. The testimony of Mrs. Colson and Mrs. Smith was that the attorneys did not tell the witnesses what to testify to; that they had been briefed and their testimony discussed before they went to the attorneys' office. What Mr. and Mrs. Colson and Mrs. Smith were to testify to at Raymond's trial and hereinbefore narrated was discussed at this conference. Mrs. Colson remembered the date because she had secured a prescription for her sick child on that day, and Mrs. Smith said she had entered it in her diary. One of the attorneys told Mrs. Smith to bring her diary to court the next morning. On the way home from the conference, Mrs. Smith stated she didn't know whether she had an entry in the diary for the 13th. Raymond said he would buy her a new diary if she did. She answered she would have to stay up all night writing in it. Defendant first told Mrs. Smith to bring her diary and, later, not to; that she wouldn't have to show it if she didn't have it. Defendant also told them if the Colsons and Mrs. Smith "stuck together he thought Raymond would get off," and he would buy them some whiskey.

Defendant, his wife and Raymond came by for Mrs. Smith on January 17, 1961. Raymond told her not to bring the diary, they wouldn't need it. They then tried but were unable to locate Mr. and Mrs. Colson. The Colsons had been subpoenaed to testify but, according to Mrs. Colson, they went to Mr. Colson's uncle's in the country because she wouldn't get up in court and lie.

One of the attorneys told Mrs. Smith to get her diary at the noon recess when informed she did not have it. At noon, in the presence of defendant, Raymond told Mrs. Smith not to get her diary, he didn't think they would need it. Upon learning that Mrs. Smith did not have her diary, the attorney told her he would not use her as a witness until he had seen the diary; and defendant, who was present, interrupted and volunteered to take her to get the diary. Mrs. Smith testified she got her diary from the house and upon returning to defendant's car showed defendant that she had an entry for March 13. Defendant, while the car was in the driveway, had her draw a line under the entry of March 13, and she, with defendant's pen, made the following entries in her diary at defendant's directions: Under March 11. "Got a date with Raymond Sunday to have dinner over at Warrens." Under March 13. A line under her original entry. "Raymond and I went over to Warren's for dinner tonight Mom came over and got the kids about 3:30 Raymond came over just as they were leaving Got home about 1:00 o'clock and was I forever more tired" "Raymond [The March 13 page ends and on the other side of the sheet the "14" of March 14 is scratched out.] got drunk and Warren had to bring me home The little stink passed out on us. [This is followed by a line.] Raymond came by today to say he was sorry he passed out last night and couldn't bring me home he said he stayed all night over at Warrens." On the way back and again at the courthouse before Mrs. Smith was called as a witness defendant told her, if asked, to be sure to say she made the entries on the dates shown in the diary. She so testified.

Mrs. Colson also testified Raymond was not at her home the evening of March 13, 1960; he never stayed all night or ate supper at her house, and Mrs. Smith had never been in her house.

Mrs. Smith also testified that all her conversations with defendant were in Greene County, Missouri; that she was at home with her two daughters on March 13, 1960; that she did not see Raymond Baldwin that day or night; that she was not in the Colson home on March 13, 1960, and had never been there; that she had her first date with Raymond about the first of June, 1960, and the last date Halloween night, 1960, and

**22**

that her testimony in the case of State v. Raymond Baldwin concerning the whereabouts of Raymond Baldwin was false.

Defendant testified he never had any conversations with Mrs. Smith about her testimony at his son's trial except a telephone conversation in which she wanted to know when the trial would be, and at the two conferences with the attorneys. He denied asking Mrs. Smith to give false testimony at his son's trial or to make false entries in her diary or promising to buy Mrs. Smith and Mr. and Mrs. Colson liquor. He testified he drove Mrs. Smith home for her diary; that she was in the house about a half a minute; that she never opened her diary; that "I never seen the diary"; that "me and her never said a word going over and coming back."

Mrs. Smith was picked up by the police and gave them a written statement on January 21, 1961, covering her perjury. The two attorneys, who were then representing this defendant, each testified that they talked to Mrs. Smith in January after her arrest and she told them she testified correctly at the trial and had lied to the police. Mrs. Smith testified that she told the attorneys that she had told the truth to the police; and in this she was corroborated to some extent by the testimony of her mother, Mrs. Violet Sloan.

■ Defendant contends the State failed to make a submissible case on the ground "the uncorroborated testimony" of Mrs. Smith was "so inconsistent, self-destructive, and unworthy of belief" as to not constitute substantial evidence in support of the verdict. Illustrative of the claimed inconsistencies are the following: Her testimony at Raymond's trial that Tommy Burton's reputation for truth and veracity was bad and at this trial on cross-examination that she did not know his reputation. Her testimony at Raymond's trial that she had approximately thirty or forty dates with him and at this trial she thought she had six or seven dates with him after June, 1960. Her testimony at this trial that she

was pretty sure she was living in the 600 block of North Broadway in Springfield on March 13, 1960, whereas there was no such address on North Broadway. She explained she had lived there but a month or two and was not sure of the address. Her testimony at this trial on cross-examination that she did not and that she did drink intoxicants. She stated: "Yes, I have drank some. I mean, I am not an alcoholic." The conflict between her testimony and the testimony of the two attorneys representing the Baldwins as to whether she told the truth in her statement to the police was for the jury to determine, and a fair reading of Mrs. Sloan's testimony is that Mrs. Smith stated she told the police the truth.

It is stated in State v. White, Mo., 263 S.W. 192, 194 [10, 11]: "A prosecution for subornation of perjury is not governed by the same rules of evidence as in trials for perjury; in the latter the principal witness must be corroborated. The suborner and the perjurer are not accomplices. Each is guilty of a separate crime. It is not necessary, therefore, as we held in a well-considered opinion by Williams, C. (State v. Richardson, 248 Mo. 563, 571, 154 S.W. 735, 44 L.R.A.[N.S.] 307), to the validity of a conviction for subornation of perjury, that the testimony of the perjurer be corroborated, either as to the subornation or the actual commission of the perjury." Wigmore, Evidence, 3d ed., § 2042, p. 281.

■ In determining the submissibility of the State's case we view the evidence in the light most favorable to the State, accept the State's probative evidence as true and draw therefrom the permissible inferences favorable to the State, and disregard defendant's contradictory evidence. State v. Feasel, Mo., 344 S.W.2d 41, 42 [3], and cases cited.

In this case, Mrs. Smith's testimony on the main fact issues was corroborated. There was other evidence to establish what Mr. and Mrs. Colson's and Mrs. Smith's

testimony was supposed to be at the burglary trial; and what Mrs. Smith's testimony was at that trial. Tommy Burton testified that Raymond committed the burglary with him between 7:00 and 8:00 p. m. March 13, 1960; Mrs. Colson testified that Raymond was not at her home on March 13, 1960, from 3:30 or 4:00 p. m. to 1:00 a. m. March 14, 1960; that he never ate supper or stayed all night at her home, and that Mrs. Smith had never been in her home. There was other corroborating testimony.

Defendant's cases of State v. Sarten, Mo., 344 S.W.2d 1, 3–7, or State v. Nash, Mo., 272 S.W.2d 179, 183 [1], do not establish defendant's position under this record. Mrs. Smith's testimony was for the jury to weigh. Defendant's contention is overruled.

■ Mrs. Smith estimated that the trip to her home at 527 South Broadway to get her diary, make the entries she made therein and return to the courthouse took twenty to twenty-five minutes. Detective Floyd Robards of the Springfield Police made the trip over the route described by Mrs. Smith to 627 South Broadway with his partner, Jerry McLachlin, driving and Mrs. Smith giving the directions. Stopping in the driveway, he went up to the house, introduced himself, returned to the car, wrote the entries Mrs. Smith testified she made in her diary, and returned to the courthouse in nineteen minutes. They kept within the speed limits on the trip.

Defendant contends Mr. Robards' testimony should have been excluded because it was not established that the experiment was made under substantially the same conditions that existed when defendant and Mrs. Smith made the trip.

Defendant's best judgment was that his trip with Mrs. Smith consumed fifteen minutes. He testified "the traffic was just ordinary" for around the noon hour; that the streets were dry and clear, and his average speed was around 20, 25 m. p. h. John E. Craig, Jr., defendant's witness,

testified a like experiment with defendant driving took thirteen minutes, defendant pausing in the driveway for about thirty seconds; that the average speed was about 25 m. p. h.

It is stated in Faught v. Washam, Mo., 329 S.W.2d 588, 598 [13], cited by defendant: "Generally speaking, experimental evidence is admissible, in the sound judicial discretion of the trial court, when it is shown that the experiment was conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in suit. However, it is not required that the conditions surrounding the experiment should have been precisely identical with those surrounding the occurrence under investigation; and, if the conditions were substantially similar, the differences in condition are for the jury in evaluating the weight to be given such evidence."

Mrs. Smith had to enter the house for her diary and upon her return, while defendant's car was in the driveway, made, at defendant's directions, the entries in her diary quoted hereinbefore. Under Mr. Craig's and defendant's testimony the stop in the driveway was for thirty seconds. These experiments did not involve scientific exactness or technical knowledge. They were test runs. Detective Robards' was the only experiment giving consideration to the time required to copy said entries. If he stopped at 627, as he testified, instead of 527 South Broadway, the additional time consumed thereby lessened the available time for making the entries and was to defendant's advantage. When an allowance is made for the time consumed in making the entries in the diary defendant's evidence (making no such allowance) of thirteen or fifteen minutes and Robards' testimony (making an allowance for copying the entries) of nineteen minutes are in substantial accord. State v. McWilliams, 267 Mo. 437, 184 S.W. 96, 101 [13]; State v. Forbus, Mo., 332 S.W.2d 931, 934 [3]; 24B C.J.S. Criminal Law § 1915(5), p. 75. Robards' said testimony was cumu-

lative to the prior testimony of Mrs. Smith and stands uncontradicted by any testimony allowing for making the entries in the diary. State v. Bright, Mo., 269 S.W.2d 615, 623 [10].

The trial court considered this questioned testimony admissible and in the circumstances of this record we find no abuse of discretion constituting prejudicial error.

■ There was substantial evidence of a conspiracy between defendant and his son Raymond and Mrs. Smith's testimony as to statements of Raymond out of the presence of defendant was properly admitted.

■ Direct proof of agreements between conspirators is seldom obtainable and a conspiracy to commit an offense may be established by circumstantial evidence. State v. Strait, Mo., 279 S.W. 109, 113 [4, 7] (stating "proof of a common criminal purpose, acted upon by the parties" is sufficient to show a criminal conspiracy); State v. Menz, 341 Mo. 74, 106 S.W.2d 440, 448 [8–10]. The fact that Mrs. Smith admitted committing perjury at Raymond's trial only affected her credibility. State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 27 [8]. A conspiracy may be established by the testimony of one of the conspirators. State v. Stogsdill, supra 23 S.W.2d 28 [13]; State v. Emrich, Mo., 250 S.W.2d 718, 725 [9]. See also State v. Price, 361 Mo. 1034, 238 S.W.2d 397, 399 [3].

Mrs. Smith testified defendant told her to talk to Raymond at the garage. She did so and then went to defendant's home. Defendant outlined what her testimony should be. When she protested, defendant said he thought she better and that Raymond would talk to her. Then, after testifying that Raymond thereafter talked to her on three occasions prior to the trial, she testified that at the garage Raymond told her to talk to his father, defendant. Discussions concerning the supposed testimony of Mr. and Mrs. Colson and Mrs. Smith were had in the automobile and the attorneys' office in the presence of defendant and Raymond. Mrs. Colson corroborated Mrs. Smith's testimony in material respects, including discussions in the automobile and the attorneys' office, stating "I had been briefed on all of this before" they went to the attorneys' office. Both Mrs. Colson and Mrs. Smith stated that on the trip home defendant told them "If we all stuck together he thought Raymond would get off." On the day of the trial, defendant took Mrs. Smith to her home for her diary and dictated the entries she made therein.

The State's evidence, if believed, clearly authorized a finding that defendant and his son Raymond were acting in concert to have Mrs. Smith give perjured testimony in Raymond's burglary trial.

■ Defendant's counsel at the close of the State's case stated to the court that the State intended, if defendant testified, to use "a record of defendant having been fined for contempt of court" and "we would like a ruling on that at this time" to avoid materially prejudicing the defendant by objecting before the jury. The court informed the State's attorney if he had no citation to back him up the inquiry would not be permitted. Defendant's request proceeds upon the theory the evidence would be material if admissible.

On direct examination when asked if on the trip for Mrs. Smith's diary he told Mrs. Smith "to be sure to tell that she made them [the questioned entries in her diary] on March the 13th and the 14th?" defendant answered: "No, I didn't tell her. Q. Sir? A. No, I didn't tell her. I will tell you the truth: I wouldn't lie, there wasn't a word—me and her never said a word going over and coming back, and come on up and I went in the courthouse—in where they was having the trial, they was just picking up the trial, and she set down by the side of my wife, outside, and we never said a word. That's the truth. May God Almighty strike Me down if it's not the truth."

By this testimony defendant intended to have the jury believe he was telling the truth, was not lying, with respect to the inquiry made, and would not lie under any circumstances.

On cross-examination defendant testified that he had previously been a witness in court under oath and, after first answering he had never sworn falsely, he was asked "whether or not on October the fourth, 1948, you were not sentenced to three months in the Greene County Jail and fined $500.00 for contempt of court on the grounds you swore falsely under oath?" Defendant answered: "Yes, I was fined that. Yes."

A defendant on trial in a criminal case who testifies "shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case." § 546.260. A person "convicted of a criminal offense" is a competent witness, "but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination * * *." § 491.050. See State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87, 92 [6], 103 A.L.R. 339.

"[W]here evidence is admissible for one purpose or one issue but would be improper for other purposes and upon other issues in the case, it should be received" and an instruction given, if requested, limiting the purpose for which the jury may consider the evidence. State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58, 61 [3], 124 A.L.R. 1331; State v. Scown, Mo., 312 S.W.2d 782, 789 [7].

State v. King, 342 Mo. 975, 119 S.W.2d 277, 282 [8–11], involved the rape of E. F., a 13-year old girl at a boarding school. On direct examination defendant, being asked " * * * did you ever get smart, as they say, with any of these girl students," answered: "No, sir." On cross-examination defendant stated he meant he didn't get smart with the girl students in an amorous way or by having sexual intercourse with them. The State then questioned defendant in some detail with respect to clandestine relation with M. W. and adduced evidence to impeach defendant. The court considered defendant had tendered the issue and the State had the right to meet it, although it would have been improper to receive the questioned evidence in the State's case in chief.

In State v. Wilson, Mo., 320 S.W.2d 525, 528 [3, 4], defendant, charged with molesting a minor, one Richard ———, testified on direct examination that he had never committed the act charged with Richard ——— or with anyone else, and, on cross-examination, that his prior testimony in this respect was "correct." In rebuttal Barry ——— testified that defendant had committed at a different time a like act upon him. The court considered defendant intended to convey to the jury that he was not the kind of a person who possibly could commit such a detestable offense, and while the State could not initially and in chief have introduced the testimony of Barry, his testimony was proper in rebuttal, quoting the following from the King case, supra: "Certainly the accused ought not to be permitted to tender the issue and gain the benefit of so doing, and then contend there is no such issue, or that the question is immaterial, when the prosecution offers to meet it."

In State v. Carter, 345 Mo. 74, 131 S.W. 2d 546, 547 [3], defendant, on trial for the murder of one Pierce, testified upon redirect examination to trouble he had with one Spratt, and the State was permitted to introduce evidence in rebuttal contradicting defendant's version of the Spratt difficulty only because defendant saw fit to testify with respect thereto. Consult State v. Kaufman, Mo., 254 S.W.2d 640 [3], and cases cited.

▮ Where defendant tenders the issue, the State has a right to meet it, and is not bound by defendant's answer. State v.

King, supra, 119 S.W.2d 277, 284 [12], and this is the effect of other cases supra.

We have said a criminal contempt proceeding is not a criminal case. Osborne v. Purdome, Mo.Banc, 244 S.W.2d 1005, 1011 [4–9], 29 A.L.R.2d 1141; Osborne v. Owsley, Banc, 264 Mo. 544, 264 S.W.2d 332, 38 A.L.R.2d 1128. However, a judgment in contempt for perjury has been considered pertinent upon the question of a witness's credibility. It is stated in 98 C.J.S. Witnesses § 507, p. 409: "Although a judgment holding a person in contempt of court is not a 'conviction of a crime' within the rule, *where the basis of the judgment in contempt is perjury,* it is pertinent on the question of credibility." (Emphasis supplied.) See also 58 Am.Jur., Witnesses, § 735, p. 398; Niemeyer v. McCarty, 221 Ind. 688, 51 N.E.2d 365, 370 [15], 154 A.L.R. 115; Dockerty v. People, 96 Colo. 338, 44 P.2d 1013, 1018 [17]; Annotation, 49 A.L.R.2d 846, § 2; 1 Underhill, Criminal Evidence, 5th ed., 1962 Supp., § 244, n. 17b.

We hold that since defendant affirmatively originated the issue of his veracity as a witness in his direct examination the State had the right to meet this issue by the proof tendered.

■ Defendant says the court erred in overruling his objection to the State's comment in argument upon the failure of Raymond Baldwin, whose name was endorsed as a witness on the information, to testify on behalf of defendant, because the witness was either equally available to the State or was not available to this defendant. Defendant does not quote the questioned comment. It was to the effect: "If this man were not guilty, Raymond Baldwin would have been in this courtroom and told you that."

It is stated in State v. Beasley, 353 Mo. 392, 182 S.W.2d 541, 544 [8], that the mere fact that the names of witnesses are "indorsed on the State's information does not establish that they were partial to the State." Supreme Court Rule 24.17, V.A.M.R. requires the endorsement of the names of witnesses on informations. § 545.-240. In State v. Larkin, 250 Mo. 218, 157 S.W. 600, 609 [9], 46 L.R.A.,N.S., 13, it was held that comment on the failure of a daughter of a defendant, who was at or near the place of a killing, to testify was proper.

In State v. Collins, 350 Mo. 291, 165 S.W.2d 647, 649 [4], stressed by defendant, the witness involved had initiated the prosecution and testified for the State at the first trial, but was not called at the second trial, though endorsed and subpoenaed as a witness by the State. In these circumstances it was considered prejudicial for the State in its closing argument to retaliate by asking why defendant had not called said witness in answering defendant's legitimate argument commenting on the State's failure to call him. That is not the situation here presented.

■ Defendant states Raymond stood charged upon a separate information with the same crime for which defendant was on trial. Claiming the right against self-incrimination is personal to the individual. State v. Malone, Mo., 301 S.W. 2d 750, 757 [19, 20]. The prohibition against commenting on a person's failure to testify is limited to the accused, or the wife or husband of the accused. Sup.Ct.R. 26.08; § 546.270.

State v. Collins, supra, 165 S.W.2d 1. c. 648 [2], states "available," as here used, does not mean merely accessible for the service of a subpoena, but "depends upon such matters as the one party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case, and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural

that he would be expected to testify in favor of the one party and against the other."

■ A State's attorney may make a vigorous argument so long as his remarks are confined to the record and the legitimate inferences to be drawn therefrom. The State's comment was not that Raymond's testimony would be damaging to defendant, as defendant argues, but that Raymond would give favorable testimony to defendant if defendant were not guilty. From what is said in State v. Collins and the facts disclosed by this record, the comment of the State was legitimate argument.

■ Defendant claims the court committed error in giving instruction No. 6. Defendant's only authority is State v. Gentry, 320 Mo. 389, 8 S.W.2d 20, 28 [6], a case where, upon a separate trial, Gentry was convicted under an information charging Wilkins Taylor and defendant jointly with the crime of rape; and an instruction told the jury they could consider the acts of Taylor as the acts of defendant if they found "that the defendant was 'in company with' Taylor" at the time of the rape without requiring the jury to find "that defendant and Taylor were, at the time in question, acting in concert and in furtherance of a common purpose and design."

Instruction No. 6 is in four paragraphs. Defendant's criticism of the instruction involves the last paragraph, which reads:

"You are further instructed that if you find and believe from the evidence, beyond a reasonable doubt as reasonable doubt is defined in other instruction, and disregarding any statements, if any, made by Raymond Baldwin not made in the presence of the defendant Reggie Allen Baldwin, that Raymond Baldwin and defendant Reggie Allen Baldwin did knowingly act together to suborn perjury by Helen Smith then, and in that event only, you may consider the statements of Raymond Baldwin, if any, made outside of the presence of the defendant Reggie Allen Baldwin, as you may consider any other evidence in this case, in determining the guilt or innocence of this defendant."

If Raymond and defendant "did knowingly act together to suborn perjury by Helen Smith," they intelligently, consciously, and intentionally (State v. Rack, Mo., 318 S.W.2d 211, 215 [1]) acted together, in concert, to carry out their common purpose to suborn perjury by Helen Smith. The questioned portion of this instruction is cautionary in nature and appears to be based upon an instruction stated to be correct and favorable to defendant in State v. Yates, Mo., 252 S.W. 641, 645 [5]. It required the jury to find the submitted acting together beyond a reasonable doubt, without considering any statements by Raymond not made in the presence of defendant, and was as favorable to the defendant as the approved instruction in the Yates case. Defendant's presentation does not establish error.

The foregoing disposes of the points presented in defendant's brief. Our examination of the matters we inquire into under Supreme Court Rule 28.02 discloses no prejudicial error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.