The State v. Otho Busch, Appellant.—119 S. W. (2d) 265.

Division Two, August 17, 1938.

*Williams & Huston* for appellant.

*Roy McKittrick*, Attorney General, and *W. J. Burke*, Assistant· Attorney General, for respondent.

962

COOLEY, C.—Appellant, defendant below, was convicted of grand larceny, for the stealing of cattle, was sentenced to five years' imprisonment in the penitentiary, and has appealed.

The State's evidence shows that Frank B. Cochran owned a farm in Lincoln County on which he had fifty-seven head of cattle. In the field in which the cattle were there was a barn, with adjacent sheds, near the highway, occupied by the cattle at will. On the night of December 31, 1935, or rather the early morning of January 1, 1936, at about two or two-thirty o'clock A. M., seven of those cattle were stolen. The State's evidence was that four young men committed the theft, viz., Abe Chandler, Clarence Creech, Derwood Wells and defendant, Otho Busch. The stolen cattle were taken that night by defendant and Chandler to St. Louis, and there, early the next forenoon, sold by Chandler to the American Packing Company, from which they were soon thereafter recovered by Cochran. Within a few days thereafter said four men were arrested. Chandler, Creech and Wells pleaded guilty and were sentenced to the intermediate prison or reformatory at Algoa. Those three testified as witnesses for the State. Their testimony was that the theft was committed pursuant to prearrangement and agreement, all four men, viz., said three and Busch,

participating in the physical act of taking the cattle; that the cattle were loaded into defendant's truck at Cochran's barn; that it was agreed that defendant and Chandler should take the cattle to St. Louis and sell them; and that defendant was to have one-half of the proceeds. It is admitted that said cattle were transported to St. Louis by defendant in his truck, Chandler accompanying him.

Defendant, testifying in his own behalf, claimed that he had no knowledge that the cattle were being stolen; that on the night of December 31st as he was going home in his truck he was overtaken and accosted by two men in an automobile, who were then unknown to him but who, he later learned, were Chandler and Creech, and was asked if he would haul a light load of cattle to St. Louis for them, their truck having broken down; that after some negotiation he agreed to haul the load for $7; that he then, accompanied by and under direction of Chandler, went to the barn above mentioned, helped in the loading of the cattle, and then, accompanied by Chandler, took the cattle in his truck to the American Packing Company at St. Louis, where they were unloaded, and that he there left Chandler, not seeing him any more, and went over into Illinois, later returning to his home. In short it may be stated that defendant, who said he was in the trucking business, while admitting that he helped load the cattle at the time and place shown by the State's evidence and transported them thence to St. Louis, claimed as his defense he had no knowledge that they were being stolen and was simply hauling them for Chandler, or Chandler and Creech, in good faith, for hire.

■ The foregoing is a sufficient general outline of the facts. There was considerable testimony tending to impeach Chandler and Creech, especially the latter, by statements made out of court contradictory of their testimony at the trial, such statements being to the effect that defendant did not know the cattle were being stolen and had nothing to do with the stealing. That testimony need not be detailed. The State clearly made a submissible case, the weight and credibility of the evidence being for the jury. Such further facts as may be necessary will be stated in connection with points to which they particularly apply.

■ The court gave, among others, the following Instruction, No. 6:

"The jury is instructed that if you believe and find from the evidence that the defendant made any statement or statements if the jury find any statements were made by the defendant, in relation to the offense charged in the information and after such offense is alleged to have been committed, you must consider such statement or statements all together. The defendant is entitled to what he said for himself, if true, and the State is entitled to the benefit of anything he may have said against himself in any statement or state-

ments proved by the State. What the defendant said against himself, if anything, the law presumes to be true, unless negatived by some other evidence in the cause, because said against himself. What the defendant said for himself the jury may believe or disbelieve, as it is shown to be true or false by the evidence in the case. It is for the jury to consider under all the facts and circumstances in evidence in this case, how much of the whole statement or statements of the defendant proved by the State, if any, the jury, from the evidence in the case, deem worthy of belief.''

Appellant charges prejudicial error in the giving of said instruction.

The only evidence that might be thought to call for an instruction relative to extrajudicial statements of defendant after the commission of the crime was the following:

As to "statements" against interest, Chandler testified that when the cattle were unloaded at the American Packing Company defendant immediately left, leaving him, Chandler, to sell the cattle and agreeing to wait for and meet him at the A. J. Childs Building some blocks distant; and testimony of Creech to the effect that after he had been taken from jail, where he was incarcerated on this charge, to the circuit courtroom, had pleaded guilty and had there told his story, which is not set out in the record, defendant on the way back to the jail, asked him to go back up there and clear him (defendant) by telling that defendant had only been hired to haul the cattle, and offered to give him $100 if he would do so.

Chandler did not testify what defendant said at the packing company—merely that defendant agreed to meet him at the Childs Building.

The only other scrap of evidence that might be treated as tending to show an extrajudicial statement of defendant is found in the cross-examination of one Himmel, a witness for defendant. Himmel was called as a witness to impeach Creech by proof that he had heard Creech say that defendant had nothing to do with the stealing. On direct examination he so testified. He was subjected to a vigorous cross-examination, in the course of which the prosecuting attorney was seeking to prove that Himmel had told him that he, Himmel, merely overheard a few words of conversation among Creech, Wells and defendant, in the jail and did not know who spoke them or to whom they were directed. They were not directed to him. He testified that as he passed near Creech, Wells and defendant he heard one of them speak the words in question. Several times in his cross-examination he stated definitely that he overheard Creech say that Otho Busch did not have anything to do with stealing the cattle. He also said that he did not hear any statement or words that preceded

or followed that statement. Later in his cross-examination as to what he had told the prosecuting attorney he was asked, "Didn't you make this statement, 'I heard the word "cattle" and I heard Busch say "I did not have anything to do with it," and I heard no other part of the conversation if there was any between Busch, Creech and Wells, and that the word "cattle," and sentence, "I did not have anything to do with it" is each and every word that I heard of the conversation.'" He answered, "Yes, I did not have anything to do with stealing of the cattle. I heard that." It is clear from Himmel's testimony that whatever the words which he overheard were or whoever spoke them he was referring in his testimony to the one occasion at the jail above referred to. But it is not clear that he meant to refer to defendant as the speaker. The question and answer above quoted would indicate that he did. Other answers in which he used the pronoun "he" in referring to the speaker clearly meant Creech. We think it fairly inferable from his cross-examination as a whole that he claimed to have heard only one person speak.

Other than what we have stated there was no proof of any conversations with or statements made by defendant after the theft and before the trial.

Witnesses for the State testified to incriminating statements made by defendant on the night of the larceny and before its commission in the course of planning and arranging to carry out the theft.

In this state of the evidence we are inclined to think that Instruction No. 6 should not have been given even if it be treated as a proper instruction in any case. It was too apt to be misunderstood or misapplied by the jury. It was not intended to apply and should not be applied to defendant's alleged statements made in the course of the conspiracy and before the theft. It is at least questionable whether it is properly applicable to Chandler's testimony as to the alleged "agreement" at the packing company, because, while the asportation of the stolen property had been completed the contemplated sale thereof and division of the proceeds had not been made, and said agreement, if made, was so immediately and closely connected with the conspiracy and its purpose and with the whole transaction as to constitute, we think, part of the *res gestae* thereof.

This leaves as the only evidence to which said instruction could properly apply, the testimony of Creech as to defendant's alleged offer to bribe him to go back up to the circuit courtroom and say that defendant had only been hired to haul the cattle, and Himmel's testimony that he overheard defendant say he did not have anything to do with the stealing, if the jury understood him so to mean. These items of evidence came into the case in the course of cross-examination, the emphasized purpose of which was to discredit said witnesses.

Particularly is this so as to the statement testified to by Himmel. It may have failed to impress the jury as a statement of defendant in his favor, proved by the State, within the purview of the instruction, because of the incidental way in which it got into the case and the fact it was elicited by the State only in cross-examining defendant's witness in an effort to impeach his direct testimony and the uncertainty as to who Himmel meant to say made the statement.

If the jury did not understand Himmel to mean that defendant made the statement then the case on this point is analogous to State v. Duncan, 336 Mo. 600, 613, 80 S. W. (2d) 147, 153, wherein the court said of a like instruction that it could not be considered harmless because the only extrajudicial statements proved to have been made by the defendant were unfavorable to him and there were no favorable statements to be weighed with the unfavorable; that under the facts the effect of the instruction was to single out the unfavorable statements and tell the jury they must consider them.

But even if the jury understood Himmel to mean that defendant made the statement that he had nothing to do with the stealing we think the giving of said instruction was prejudicial error.

In State v. Johnson (en banc), 333 Mo. 1008, 63 S. W. (2d) 1000, the court considered an instruction on this subject. The specific objection to the instruction in that case was that it failed to tell the jury that the defendant was entitled to the benefit of what he said for himself, if true, and also failed to require the jury to consider the whole of any statement or statements made by the defendant. The instruction in the instant case contains those elements. But on motion for rehearing in the Johnson case, WESTHUES, C., reviewed prior decisions of this court and other authorities and said that an instruction such as the one we now have before us, even though it contains the elements for the omission of which the instruction in that case was specifically condemned, "invades the province of the jury as to what weight should be given to the testimony and should not be given." That opinion was adopted by the court en banc. This division followed it in the Duncan case, wherein it is said that the giving of such an instruction with reference to statements against interest made by a defendant in a criminal case is prejudicial and erroneous.

It might be argued that the instant case is distinguishable from the Johnson case and the Duncan case in that in the Johnson case the instruction omitted essential elements and in the Duncan case there were no favorable statements to be considered. But the reasoning of both those decisions points to the conclusion that it is prejudicial error to give such an instruction in a criminal case even where there is evidence tending to show both favorable and unfavorable statements. We so hold.

■ Appellant assigns as error the giving of Instruction No. 5, which purports to cover the case and which reads as follows:

"The court instructs the jury if you find and believe from all the facts and circumstances in evidence in the case beyond a reasonable doubt, that the defendant, Otho Busch, either alone or with the aid of others, at the County of Lincoln and State of Missouri, on the 1st day of January, 1936, did unlawfully, fraudulently, and feloniously take, steal and carry away certain neat cattle (describing them), the personal property of F. B. Cochran, with the felonious intent to convert the same to his own use and permanently deprive the owner thereof without his consent, then you will find the defendant guilty of grand larceny as charged in the information and you may assess his punishment at imprisonment in the state penitentiary at a term of not less than two years and not exceeding five years. And unless you so find you will acquit the defendant."

Appellant says this instruction was not based on the evidence and was erroneous because there was no evidence to justify a finding that he *alone* stole the cattle. It is true that instructions should be based on the evidence and that there was no evidence to authorize a finding that appellant alone did the stealing. The instruction, in the event of another trial, should be modified in this respect. However, we do not believe that in the circumstances of this case the jury could have been misled to defendant's prejudice by that part of the instruction.

■ Appellant further contends that said Instruction No. 5 was prejudicially erroneous because it failed to submit or take into consideration his defense that he did not know the cattle were being stolen and was hauling them in good faith for hire. There was no instruction given or requested submitting that defense.

In State v. Slusher, 301 Mo. 285, 256 S. W. 817, a larceny case, a similar instruction was held reversibly erroneous because it did not take into consideration the defense offered by the defendant to the effect that he had come by the property honestly. The same ruling was made in State v. Harris (Mo.), 267 S. W. 802, another larceny case in which there was a similar situation.

On behalf of the State it is argued that the concluding sentence, "And unless you so find you will acquit the defendant" is sufficient reference to any defense the defendant may have. Cases are cited dealing with converse instructions in criminal cases. They are not larceny cases where a defense such as here offered was tendered. We shall not take space to analyze them nor discuss what constitutes a sufficient converse instruction and under what circumstances it should be given.

In the Slusher case the instruction did not have the above quoted closing direction on one like it. But the court did not treat the

failure to submit the defendant's theory of the case as mere failure to give a converse instruction. It held the defense there offered raised a question of law upon which, under Section 4025, Revised Statutes 1919, now Section 3681, Revised Statutes 1929 (Mo. Stat. Ann., p. 3227), it was the trial court's duty to instruct as part of the law of the case, whether requested or not, and reversed the judgment because the court had failed to do so. State v. Harris, supra, was reversed for the same reason and on the same ground. In the Harris case the instruction did have a concluding sentence like that in the case before us. Under the decisions in both the Slusher and the Harris cases, supra, Instruction No. 5 herein was prejudicially erroneous. [See, also, State v. Johnson, 334 Mo. 10, 20, 64 S. W. (2d) 655, 659.]

■ Appellant complains of Instruction No. 7 on credibility of witnesses. The complaint is as to the concluding portion which tells the jury "if you believe that any witness has knowingly sworn falsely to any material fact you are at liberty to reject *the portion of such witness' testimony you may believe to be false.*" (Italics ours.) Appellant says that instead of the words we have italicized the instruction should have read, "You are at liberty to reject all or any portion of such witness' testimony." He cites State v. Hamilton, 304 Mo. 19, 263 S. W. 127, wherein the concluding direction as contended for by him was approved, with citation of many cases. Such concluding direction contended for by appellant is the one customarily given and though sometimes challenged has been consistently upheld. It was challenged, but held to be proper, in State v. Barnes, 274 Mo. 625, 204 S. W. 267, wherein the reasons for approving it are discussed.

No case is cited nor have we found any in which a concluding direction in an instruction on credibility of witnesses such as that given in this case has been ruled upon by this court. We can perceive no good reason for its use. It would seem unnecessary and useless to tell a juror that he is at liberty to reject testimony which he believes to be false. If he has intelligence enough to qualify him as a juror he knows that. We would be reluctant to hold the instruction prejudicially erroneous on this account but without further discussion we pass the question with the suggestion that if it is deemed necessary to direct the jury on this point the long approved form be used.

■ Error is assigned in that one of defendant's witnesses was asked on cross-examination "Are you out on bond on this charge you were in jail for?" The witness had testified in chief that he was confined in jail on a charge of fighting or disturbing the peace while Creech was there. The question propounded on cross-examination could not have harmed defendant.

Complaint is made that the court permitted cross-examination of defendant not authorized by his examination in chief. Defendant testified in chief he never knew Chandler or Creech until they stopped him in the road and asked him to haul a load of cattle as we have above stated. On cross-examination he was asked if he had not previously met and talked with Creech at a certain place. He replied that he had not. He was then asked if he had not, at that place, told Creech he needed $75. He answered "No, sir, did not." The last question, that regarding the $75, was objected to as being beyond the scope of the direct examination, but not until after the question had been answered. Appellant is now in no position to complain.

Lastly appellant assigns as error "Improper conduct and remarks of trial court and improper limitation of examination of witnesses." We find no prejudicial error in these respects.

The judgment is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.