**STATE of Missouri, Respondent,**

v.

**Eldon Edward GALE, Appellant.**

No. 47139.

Supreme Court of Missouri,

Division No. 2.

April 13, 1959.

Wm. Duke Hiett, Houston, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

The appellant, Eldon Edward Gale, has been found guilty of an offense under the recently enacted statute dealing with the subject of "stealing" (V.A.M.S. §§ 560.-156, 560.161, Laws Mo.1955, p. 507, Laws Mo.1957, p. 374) and sentenced to two years' imprisonment.

The information charged that on January 22, 1958, Gale *"did feloniously, wilfully, and unlawfully conceal and retain in his possession* certain personal property, to-wit: one Silvertown 825–20 truck tire, and one U. S. Royal 825–20 Truck tire, of the total value of One Hundred Dollars ($100.-00), the personal property of Dwane Muller, d/b/a Muller Construction Company, and that the said Eldon Edward Gale the said personal property of the value aforesaid *intentionally, unlawfully, and feloniously* then and there, *without the consent of the said Dwane Muller,* d/b/a Muller Construction Company, *did steal;* \* \* \*." At the instigation of the state the court gave three instructions, one on the presumption of innocence and reasonable doubt, another on the credibility of witnesses and number one, the principal instruction. That instruction, in the language of the statute (V.A.M.S. § 560.156) defined the word "steal," it defined the words "wilfully" and "feloniously" as they have heretofore been defined and the instruction submitted the state's case and the defendant's guilt in this language:

"The Court instructs the jury, that if you believe and find from the evidence, and beyond a reasonable doubt, that the defendant, in Texas County, Missouri, on or about the 22nd day of January, 1958, *did wilfully and feloniously steal the property* mentioned in evidence, as charged in the information, to-wit: \* \* \* *without the consent of the owner,* and if you further find from the evidence that at said time and place the said property, to-wit: the said two truck tires, were the personal property of Dwane Muller \* \* \* and of the value of fifty dollars or more, *you will find the defendant guilty of stealing* property of a value of at least fifty dollars, \* \* \*."

The substance of the state's evidence, by these witnesses, was this: Radford Kelly operated a garage in Licking; he said that in January, 1958, he had in his possession "some tires" and that they belonged to "Muller Construction Company" of Springfield. When asked the circumstances in which he "had those tires" Kelly said,

"Well, he left them there in my care. They was in back of the truck and he was afraid someone would get them and afraid someone—to leave them." Kelly testified that the tires in his "possession" were "located" in the paint room of his garage. Kelly did not miss the tires but one of his employees "reported to me that they was gone one morning." He then went to the garage and "They was prints on the floor that looked like tread marks where they'd been rolled, and they was a print on the—in the snow on the outside a(t) the back door," also footprints in the snow and the tires were not in the garage. Kelly said that the tires, later shown to him by the sheriff, were the same tires that had been in his garage, or "Just like them if they're not; looked like them. * * * They look just like them, anyhow. * * * Well, either them or two just like them."

The sheriff, his deputy and another man, who did not testify, drove out in the country to the appellant's home and the appellant was in his yard working on a car. The sheriff asked the appellant "if he had took some truck tires," the appellant said, " 'No,' he didn't know anything about 'em." The sheriff inquired whether the appellant had any objection to their looking around for the tires "and so he set there awhile and he stated that if we'd go back to town he'd bring the tires in in about 30 minutes." Then the sheriff testified: "We told him that we wanted to get the tires while we were there. So we got out of the car and went into his home and he go a cream can, I belive it was, and got up on it and started ripping the ceiling off of the kitchen, I believe. It was nailed up, looked like it just been re-sealed. He climbed up in the attic and started handing those two tires down." To the sheriff's testimony the deputy added that when the sheriff asked about the tires Gale said, "He didn't wanna get anybody involved, he said. * * * I didn't put the tires out there." The sheriff and his deputy then took the tires and the appellant to Kelly's garage in Licking. There was no other evidence on behalf of the state.

As the court pointed out in State v. Zammar, Mo., 305 S.W.2d 441, 444, it is neither desirable nor appropriate to embark upon a full-scale inquiry as to the scope, meaning and effect of these statutes, V.A.M.S. §§ 560.156, 560.161, until the exigencies of a particular case compel it, therefore this opinion is limited to the specific questions raised by the appellant's motion for a new trial. This much is established by the Zammar case, the primary purpose of these statutes was to eliminate the technical distinctions between the offenses of larceny, embezzlement and obtaining money under false pretenses. 305 S.W.2d loc. cit. 445; 1954 Wis.L.R. 253, 267; Anglin v. Mayo, Fla., 88 So.2d 918. Or, as the New York court observed of a comparable statute, it "was aimed at eliminating the subtle and confusing distinctions that had previously differentiated the various types of theft." People v. Karp, 298 N.Y. 213, 81 N.E.2d 817. The "Final Report of the Senate Criminal Law Revision Committee," Vol. 1, p. 47, states that this act repealed fifty-nine specific statutes relating to larceny, embezzlement and false pretenses and instead of seventy-seven definitions relating to these subjects has reduced the definitions "to a single act" of "stealing." In this connection, the report states that "stealing," as employed in the act, is a "generic term * * * having a general but, until now, no specific meaning in the law." The report points out, p. 46, that the crimes of larceny, embezzlement and false pretenses "all have one common core, that is, the unlawful appropriation or use of or interference by one person with the property of another so as to deny him his lawful property rights therein." Thus far the general purposes of the statutes are plain enough, how much further they go need not now be decided. The New York court was of the view that "it was not, however, designed to, and did not, broaden the scope of the crime of larceny or designate as criminal that which was previously innocent." People v. Karp, supra.

While the proof in this case was skimpy in many respects it is a fair and reasonable inference from the testimony of the garageman that Dwane Muller "was the owner of the tires" as alleged in the information and hypothesized in the instruction. It is also a fair inference from the quoted testimony that Muller personally left the tires in the care and custody of Kelly and that someone took the tires from his garage. Thus the state's meager evidence was sufficient to support the inference and there is no merit in the appellant's claim that he is entitled to a new trial for lack of evidence of ownership of the tires, there was no material variance in the proof in this respect and as will appear from the defendant's evidence, he obviously conceded that the tires belonged to Muller. 32 Am.Jur., Sec. 138, p. 1050; State v. West, Mo., 246 S.W. 541.

With respect to his claim that there is "no evidence to prove that the Defendant did steal the tires," whatever the scope of the statute (V.A.M.S. § 560.156), there are these established or tacitly conceded circumstances: The tires were originally in Kelly's garage, in his custody, and it is a reasonable inference that they were taken from the garage and from Kelly's custody without his permission. The appellant had the tires in his possession, they were recently stolen and he admittedly concealed them although he appears to have voluntarily turned them over to the sheriff. Just when and whether he formed the intention to convert the tires to his own uses or purposes, manifested by his concealment of them, is not known but the appropriate inferences to be drawn from his conduct in the detailed circumstances were for the jury and if found were sufficient to establish the offense of grand larceny at common law or of "stealing" under the statute. 32 Am.Jur., Sec. 40, p. 934; State v. Simpson, Mo., 237 S.W. 748; State v. Nichols, Mo., 130 S.W.2d 485; State v. Dobson, Mo., 303 S.W.2d 650.

The difficult and meritorious assignment in the appellant's motion for a new trial is that the court erred "in failing to instruct the jury on his defense that at the time the alleged tires came into the possession of the Defendant, he discontinued any use of said tires and planned to contact the alleged owner to learn what disposition was to be made of said tires; and that no further transfer of said tires was made as required by Paragraph 3, Section 560.156, Revised Statutes of Missouri, 1949, as amended Laws of Missouri, 1955, Page 507." Despite his possession and concealment of the tires, Gale entered a plea of not guilty; specifically his defense was that he did not intend to steal the tires, that is convert them to his own use without the consent of the owner, Muller. In this connection the statute provides: "If the property stolen within the meaning of subsection 2 is a chattel and the person charged with stealing the same proves by a preponderance of the evidence that no further transfer was made, and that, at the time of the appropriation he intended merely to use the chattel and promptly to return or discontinue his use of it, he has a defense to a prosecution under subsection 2."

The defendant testified that on occasion he had worked for Muller and that he had obtained other truck tires from Muller personally. He said, "I just bought them from him," and on one occasion that he "had a deal with him for six tires," was supposed to do some work for them. Part of this deal was not carried out, however, because he did not do the work and he got only one tire. As to the two tires involved in this prosecution, in addition to the deputy sheriff's testimony that Gale had said that he did not "put the tires out there" and didn't want to get "anybody involved," Gale said, "they was hauled to my home but the guy—I don't know what his name was, but they called him 'Slim'" who worked for Muller Construction Company. He said that he learned that the tires were at his house when he went to a beer tavern in Raymondville and "Slim" came up to him and told him that he (Slim) had left the tires in his yard "for me" (Gale), Mul-

ler having left Slim in charge of the tires. He said that when he drove home they were in the yard near his driveway and he "took them in and put them up overhead in the kitchen." Gale had previously owned a truck but had sold it and so had no personal use for the tires. Specifically as to Slim's having any reason for leaving the tires Gale said, "Well, I reckon that he did. He—the—Mr. Muller, I was gittin' some tires from him; * * *." And he said, "I'd sold the truck and I had no use for them and I wanted to see Mr. Muller before I done anything with them."

 This section of the statute, subsection 3, is a matter of defense and it is not necessary that the information negative the defendant's intention to merely use the chattel or "promptly to return or discontinue his use of it." State v. Zammar, Mo., 305 S.W.2d loc. cit. 444; State v. Harris, Mo., 313 S.W.2d 664. Likewise his innocent intention was a matter for the jury to find and resolve but that does not solve the problem of whether the court erred in failing to instruct the jury in some manner upon the defendant's innocent intention, intention being the gist of the offense of "stealing" as well as of "larceny." "It shall be unlawful for any person to *intentionally* steal the property of another, either without his consent or by means of deceit." V.A.M.S. § 560.156(2). The state meets the appellant's objection by contending that because the appellant did not object to the principal instruction until the filing of his motion for a new trial that he has preserved nothing for review and that this court is precluded from considering the objection now. In support of its position the state relies upon State v. Richardson, Mo., 315 S.W.2d 139, State v. Stroemple, 355 Mo. 1147, 199 S.W.2d 913, 916 and similar cases, in which the general rule is stated, "It is mandatory, before the appellants may assign error in their motions for a new trial and here, under referred Section 1174 [V.A.M.S. § 510.210 note] that they object and except to the action of the court in giving the instructions of which they later expect to complain * * * and having failed to do so their objections may not now be considered." State v. Stroemple, supra. This general rule is applicable to instructions on collateral matters and to technical objections to instructions; the rule is inapplicable if the objection is to the instruction's failure to cover "the essential law of the case;"—"Whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; * * *." V.A.M.S. § 546.070(4). If the objection is to the court's failure to instruct upon a subject falling within this statute, it is not necessary to object to the instruction at the time it is given, neither is it necessary to request an instruction, it is sufficient that the defendant raise the question in his motion for a new trial. State v. Webster, Mo., 230 S.W.2d 841; State v. Wright, 352 Mo. 66, 175 S.W.2d 866; State v. Graves, 352 Mo. 1102, 1119, 182 S.W.2d 46, 57.

In State v. Webster, supra [230 S.W.2d 842], there was a conventional instruction on grand larceny and the principal instruction, unlike the instruction involved here, contained the phrase "without any honest claim thereto" but it ignored the appellant's defense or claim of right to sell the hogs alleged to have been stolen. The court held that the defense was a part of the law of the case and despite the "without any honest claim thereto" clause reversed and remanded the cause because of the court's failure to instruct the jury upon all questions of law arising in the case. In State v. Busch, 342 Mo. 959, 967–968, 119 S.W.2d 265, 269, the defendant was charged with larceny of cattle, his defense was that he did not know that the cattle were being stolen and that he was in good faith hauling them for hire. No instructions were requested or given on this subject. The court held that the defense raised a question of law upon which it was the duty of the court to instruct as a part of the law

of the case, whether requested or not, and reversed and remanded the cause. In State v. Slusher, 301 Mo. 285, 256 S.W. 817, 819, the charge was larceny of a rowboat. The defendant claimed that he came by the boat honestly, that he bought it. In remanding the case for a new trial the court said, "The vice of the instruction is that it purports to cover the whole case, and authorizes a verdict without taking into consideration the defenses offered by the defendant to the effect that he bought the boat—came by it honestly. Under Section 4025, Revised Statutes 1919 [V.A.M.S. § 546.070], whether requested or not, the court must instruct on all questions of law arising in the case, and that means the court should present to the jury the defendant's theory of the case, as well as that of the State." In State v. Dougherty, 358 Mo. 734, 216 S.W.2d 467, the charge was leaving the scene of an accident without stopping and giving his name or residence or city of residence. Because the state's instruction which purported to cover the whole case did not embody the defense that he did stop and gave sufficient information to comply with the statute the case was reversed and remanded.

■ The most important question and fact in this case, actually the only meritorious question, was the defendant's intention, if and when formed and its purpose, whether "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner" or whether at the time of the appropriation "he intended merely to use the chattel and promptly to return or discontinue his use of it." V.A.M.S. § 560.156. Even though his conduct and recent possession of stolen property made a prima facie case (State v. Wagner, Mo., 237 S.W. 750; State v. Simpson, supra), where the defendant claims that he came into possession of property in circumstances in which he had no intention of stealing it, the court should in some manner instruct the jury on the subject. State v. Collins, 292 Mo. 102, 237 S.W. 516. In-

struction one in this case is indeed a state's instruction, it purports to cover the entire case and it does not hypothesize either abstractly or factually any matter favorable to the defendant or upon which he could be acquitted, particularly his intention. This instruction does not so much as negative or in any wise caution as did the Webster and other cases his intention, "without any honest claim thereto." See also in this connection, State v. Mathes, Mo., 281 S.W. 437. Because of the court's failure to in some manner properly instruct the jury upon all questions of law arising in the case the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and BROADDUS, Special Judge, concur.