**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Willie FOX, Defendant-Appellant.**

**No. 35365.**

Missouri Court of Appeals,
St. Louis District,
Division One.

June 4, 1974.

Howard Schainker, Asst. Public Defender, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, William F. Arnet, Asst. Attys. Gen., Jefferson City, Gene McNary, Pros. Atty., Eugene H. Fahrenkrog, Jr., Asst. Pros. Atty., Clayton, for plaintiff-respondent.

SIMEONE, Acting Chief Judge.

Defendant-appellant, Willie Fox, was found guilty by a jury and sentenced by the court under the Habitual Criminal Act to five years in the Missouri Department of Corrections for the offense of operating a motor vehicle without the owner's consent. § 560.175, RSMo, V.A.M.S. He appeals.

Taking the evidence most favorably to the State, the jury could reasonably have found that the Tree of Lights Holy Missionary Baptist Church, located at 4060 Easton Avenue in St. Louis was the title holder of a white, four door, 1964 Plymouth automobile which was used exclusively by and in the custody of Reverend George H. Grey, the church's pastor. Reverend Grey, who had been affiliated with the church for some three years, had used the automobile on November 3, 1972. On that date he and his invalid wife went fishing at Chain of Rocks Bridge and returned to his home at 4054 Kennerly Avenue in St. Louis at about 9:30 p. m. He parked "his" car in front of his home, took the keys out of the ignition, unlocked his house door, went back to assist his wife, and went into his home. He either left his key ring containing the car and house keys in the door or he may have lost them at some point. In any event, shortly after entering his home, he was talking on the telephone to a friend about his fishing trip, heard his dog barking and "got up to see what was wrong; when I went to the front window the car was gone." This was about 9:30 or 10:00 p. m. on November 3, 1972. Reverend Grey testified he did not give anyone permission to drive his automobile, did not know the defendant, Willie Fox, and did not have his car returned until November 8, 1972. In his glove compartment he had a duplicate of his license and a receipt for some car repairs with his name on both, which were later found at the time the car was returned, on the front seat of the automobile.

The scene then shifts to the early morning hours of November 8, 1972. At about 1:30 a. m. Sergeant Ward Frederick Stoll of the Berkeley Police Department, while on duty and checking an abandoned auto-

mobile parked on the shoulder of Highway I–70, noticed a 1964 white, 4-door Plymouth going west, exceeding the speed limit. It was traveling seventy miles an hour in a fifty-five mile zone. Sergeant Stoll turned on his red lights and pulled the vehicle off at the exit near the airport. The vehicle contained one occupant—Willie Fox. The vehicle had license plates CE 7140. He approached the vehicle and checked the trunk locks, the number of persons in it, and checked to see if the ignition had been "punched out." He found nothing wrong as to any of these items. He requested a driver's license, and Mr. Fox handed him "an application for a duplicate operator's license," which was dated three years earlier, August, 1969. The Sergeant asked for his valid operator's license, and Fox replied he did not have one. Sergeant Stoll then radioed the dispatcher to check on an operator's license, but the result showed that a person by that name never had an operator's license in Missouri. He then advised Fox under standard procedure that he "would have to place him under arrest for operating a motor vehicle with no operator's license." He requested Fox to "get out" of the vehicle, patted him down, and went with Fox back to the police car; before doing so, he took the key out of the ignition and requested a "license check" on the license plate on the vehicle. The information "came back as stolen, the vehicle bearing that license number; the license number was given, description of vehicle and location where it was stolen from [4000 block of Kennerly], and the date." Then Sergeant Stoll "charged Mr. Fox with auto theft, fugitive, St. Louis City, and operating a motor vehicle without owner's consent, St. Louis County."

After giving the Miranda warnings, Sergeant Stoll questioned the defendant as to whether he would "like to tell me where he got the car." Fox replied that "he had gotten the car from a fellow down in the City." The Sergeant asked if he knew the man's name and, according to the Sergeant, he understood Fox to say the name "Isaiah Johnson." Fox stated he had known Johnson a couple of days, that he got the keys from Johnson, and that he had "just gotten it that night" and that he was out "just for a ride out by the airport." On the front seat of the car at this time were a driver's license change of address stub and a receipt for repair work both in the name of Reverend George H. Grey. Fox was then conveyed to the Berkeley Police station and the vehicle was towed to an impound area. Later, Sergeant Stoll checked the St. Louis City and County arrest records and the phone book to locate one "Isaiah" Johnson, and could not locate a person by that name. On cross-examination, defense counsel brought out that the defendant might have said that he received the vehicle from "Ezell" Johnson, but the officer stated that he understood him to say "Isaiah" Johnson, although he admitted he could have said "Ezell." He did not look for the name "Ezell" Johnson.

The defendant's defense consisted of the testimony of his twenty-one year old sister, Flossie Fox. She testified that a few days before November 7, probably November 4, 1972, "Ezell" Johnson, a friend of her brother's, came to her home where she, her older sister, and Willie lived "off and on" and asked her if she wanted to buy a " '64 Plymouth and I [Flossie] asked him was it his car; he said yeah and that he would bring it by for me to see it." At that time Willie was in the apartment. On November 7, "Ezell" returned and "That is when he brought the car . . . over to the house and he gave my brother the keys for him to try the car out, you know, and he said he would call the next day, you know, to see whether I wanted to buy the car or not." The price of the car was $50.00. She admitted, however, that she did not have a driver's license and never owned a car before.

At the close of the State's case and again at the close of all the evidence, coun-

sel for the defendant Fox moved for judgment of acquittal. The motions were overruled.

The trial court instructed the jury and gave certain instructions including Instructions No. 1 [1], 2 [2], and 3.[3]

During his opening statement, the prosecuting attorney stated that Sergeant Stoll will "tell you at that time that he placed the Defendant Willie Fox under arrest for suspect stealing a motor vehicle and various other charges, and, of course, let me tell you now that he is not on trial for these other charges."

And during the prosecutor's final argument, he stated that "there is no Ezell Johnson;" that between November (the day defendant was arrested) and "today" (February, 1973), "Do you think they [Willie and Flossie] have not talked the case over and sat down and got the stories straight?" He also argued that "Ladies and Gentlemen, this is a man [defendant] who spent twenty-five years living in the City of St. Louis on the north side (objection—overruled). . . It is a tough neighborhood down there. . . . I think we all know: ghetto, degrading, dehumanizing place to live. One thing it teaches people how to survive . . . (objection —overruled). . . . These are street people; Willie is a street person; he is not employed, does not have a job. . . . This is a person who has come up with a good story; he's lived down there, knows

1. "INSTRUCTION NO. 1. The Court instructs the jury that if you find and believe from the evidence in this case beyond a reasonable doubt and in the light of these instructions of the Court that in the County of St. Louis and State of Missouri on the 8th day of November, 1972, the defendant, Willie Fox, did willfully, unlawfully and feloniously drive, operate and use a certain motor vehicle, to-wit: a 1964 Plymouth, as mentioned in the evidence, the personal property of the Tree of Lights Church, in the lawful care and custody of its employee, Rev. George H. Grey, without having secured the permission and consent of said owner, if you so find, and if you further find and believe from the evidence beyond a reasonable doubt that the said Tree of Lights Church was the owner of the said automobile, then and there in the lawful care and custody of the said Rev. George H. Grey, then you will find the defendant guilty of Operating a Motor Vehicle Without Consent of Owner. Unless you so find the facts to be as aforesaid, you will acquit the defendant.

'Feloniously', as that term is used in these instructions, means wickedly and against the admonition of the law, that is, unlawfully.

'Wilfully', as that term is used in these instructions, means intentionally, not accidentally."

2. "INSTRUCTION NO 2. The Court instructs the Jury that even if you find and believe from the evidence in this case beyond a reasonable doubt that on or about the 3rd of November, 1972, a certain 1964 Plymouth automobile, the personal property of the Tree of Lights Church, in the lawful care and custody of Rev. George H. Grey was stolen; and even if you further find and believe from the evi-

dence in this case beyond a reasonable doubt that in the County of St. Louis and State of Missouri, on the 8th day of November, 1972, the defendant, Willie Fox, did operate and use said automobile; and even if you further find and believe from the evidence in this case beyond a reasonable doubt that the defendant operated the automobile without the permission of the said Rev. George H. Grey, you must nonetheless acquit the defendant, if you further find and believe from the evidence in this case that the defendant operated said motor vehicle with an honest belief that he had permission to do so from a person he in good faith believed to be the owner and in lawful possession of it."

3. "INSTRUCTION NO. 3. You are further instructed that the Amended Information contains the formal statement of the charge, but it is not to be taken as any evidence of defendant's guilt.

The law presumes the defendant to be innocent and this presumption continues until it has been overcome by the evidence which proves the defendant's guilt beyond a reasonable doubt; and the burden of proving the defendant's guilt rests with the State.

If, however, this presumption has been overcome by the evidence and the guilt of the defendant proved beyond a reasonable doubt, your duty is to convict.

If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of the defendant's innocence."

how to get by, how to get along and how to make ends meet."

The jury returned a verdict of guilty, motion for new trial was overruled, allocution granted and defendant sentenced to a period of five years in the Department of Corrections.

On this appeal defendant makes four points: the court erred (1) in failing to properly instruct on defendant's theory of the case and thereby improperly shifted the burden of proof [to defendant]; (2) in allowing the prosecutor in his opening statement to comment on other crimes, which was "compounded" by the testimony of Officer Stoll when he testified, over objection, to running a record check on defendant's driver's license, and that he arrested defendant on "various other charges" [4] and that he testified to hearsay information relating to other charges pending against defendant; (3) in allowing hearsay testimony by "a state's witness" [5] and "Improper closing argument by the prosecutor concerning the nonexistence of a potential witness, over defendant's objections and motions for mistrial," and (4) in overruling defendant's continuing objections and in refusing to declare a mistrial as to the prosecutor's series of statements in his argument concerning defendant's "character and upbringing" which were outside the record, inflammatory, prejudicial and calculated to appeal to the passions and prejudices of the jury.

As to appellant's first point—that the court "failed to properly instruct on defendant's theory of the case and thereby improperly shifted the burden of proof [to defendant]," he argues that the court attempted to instruct on defendant's theory of the case, but "it did so erroneously." "The result was that the jury received an insufficient verdict-directing instruction (Instruction No. 1) and an improper and erroneous alternative verdict-directing instruction (Instruction No. 2)." He contends that by giving Instruction No. 2 the court "in effect excluded the essential element of intent as a part of the state's required burden of proof, and forced it [intent?] upon the defendant as an affirmative defense to prove his lack of guilty knowledge." He contends that the Supreme Court has ruled that intent, i. e. knowledge on the part of defendant that he operated the vehicle without the consent of the owner, "is an essential element of the offense charged under § 560.175. See State v. Tate, 436 S.W.2d 716 (Mo.1969); State v. McLarty, 414 S.W.2d 315 (Mo. 1967)." As we understand his contentions, he argues that Instruction No. 2 placed the burden of operating the vehicle in an honest belief that he had permission upon the defendant, rather than upon the state, and that the Instruction failed to place the burden on the state to show the element of intent to operate the vehicle without the owner's consent. Obliquely, he also contends that the state's burden of showing that the defendant did not operate the vehicle in the honest belief that he had permission was not included in the verdict director (Instruction No. 1). He relies on the rules that a verdict director which purports to cover the whole case and ignores a defense supported by the evidence constitutes reversible error. [State v. Tate, supra; State v. Drane, 416 S.W.2d 105 (Mo. 1967).] And the fact that a separate instruction is given does not cure the error of failing to include the defense in the verdict-director. State v. Winn, 324 S.W.2d 637 (Mo.1959). He concludes that "this error alone should require a reversal and new trial."

Rule 26.02(6) and § 546.070(4) require the court to instruct the jury "upon all questions of law necessary for their guidance in returning their verdict . . ."

---

4. Officer Stoll never used these words; he stated he arrested Fox for "auto theft, fugitive, St. Louis City, and operating a motor vehicle without owner's consent, St. Louis County."

5. A very vague point—presumably Officer Stoll. Such a point is not compatible with Rule 84.04(d), V.A.M.R.

In State v. Drane, supra, our Supreme Court held that where there is evidence of the defense of driving and operating an automobile in good faith in the honest belief that the defendant "had good legal title by purchase" (416 S.W.2d at 107) which was entirely ignored in an instruction which purported to cover the whole case is erroneous and constitutes reversible error. And in the later decision of State v. Tate, supra, it was held that criminal intent is an essential element of the offense of driving, operating and using a motor vehicle without the permission of the owner, and that an instruction which purports to cover the whole case but which entirely ignores a defense supported by evidence is erroneous. The conviction was reversed because the verdict-directing instruction purported to cover the whole case and ignored the defense. See State v. McLarty, supra, and cases cited in State v. Drane, supra, including State v. Busch, 342 Mo. 959, 119 S.W.2d 265 (1938); State v. Collins, 292 Mo. 102, 237 S.W. 516 (1922); State v. Slusher, 301 Mo. 285, 256 S.W. 817 (1923).

■ There is no question that before the jury could find the defendant guilty of operating a vehicle without the permission of the owner, the state must prove and the jury must find, beyond a reasonable doubt: (1) that the defendant operated the vehicle (2) without the permission or consent of the owner or the person having lawful custody thereof and (3) that the defendant operated the vehicle without an honest belief that he had the permission of the owner or a person whom he in good faith believed to be the owner. An instruction which purports to cover the whole case but which entirely ignores a defense supported by the evidence of operating the vehicle with the honest belief that the defendant had permission to do so is erroneous. State v. Drane, supra; State v. Tate, supra.

■ We believe that Instructions 1 and 2 are erroneous and the judgment should be reversed and the cause remanded. First, the verdict director should have negated the defense of "honest belief" or should have included a cross-reference in a separate numbered paragraph to the defense. State v. Drane, supra, and cases cited therein; Cf. State v. Winn, supra.

■ Secondly, we believe Instruction No. 2 improperly shifted the burden of proof to the defendant to require the jury to find that the defendant operated the vehicle in the honest belief that he *had* permission from the owner or lawful custodian.

Instruction No. 2 given by the trial court authorized the jury to *acquit* if it found that the defendant operated the vehicle with an honest belief that he had permission. If a reasonable doubt existed in the minds of the jury that defendant had an honest belief that he had permission, that doubt would of necessity be resolved in favor of the State, and the jury would be required to convict.

But the true test, as exemplified in MAI–CR 7.80 is that, in order for the jury to find guilt, it must find beyond a reasonable doubt that the defendant *did not* operate the vehicle in the honest belief that he had permission from the owner or custodian so that if a reasonable doubt existed in the minds of the jury that he did not operate the vehicle in the honest belief that he had permission, that doubt would be resolved in favor of the defendant and the jury would be compelled to *acquit*.

We believe Instruction No. 2, therefore, improperly shifted the burden of proof to the defendant to require the jury to find that he *did* operate the vehicle with an honest belief that he had permission whereas the jury should have been required to find that the defendant *did not*

operate the vehicle in the honest belief that he had permission.[6]

Appellant's second point is that the court erred in permitting the prosecutor in his opening statement to comment on "other crimes" which was compounded by the testimony of Officer Stoll when he testified to running a record check on the defendant's driver's license, and that he arrested defendant on "various other charges" and that Officer Stoll testified to hearsay information relating to the disposition of other charges.

■ Appellant relies on the well-established rule that proof of the commission of separate and distinct crimes is not admissible, State v. Reese, 274 S.W.2d 304 (Mo. banc 1955), unless within one of the exceptions to show motive, intent, absence of mistake or accident, a common plan or identity. But this general principle was not violated under the circumstances of this case.

The same objection was made in State v. McLarty, 467 S.W.2d 58 (Mo.1971). Defendant complained that the testimony of the officer "At that time I advised [him] he was under arrest for stealing over fifty, an automobile * * *" was evidence of a separate and distinct offense. The Supreme Court rejected the contention holding that the reference was to the questionable possession and driving of the automobile and not as indicating that the defendant committed another crime. 467 S.W.2d at 61.

■ The trial court did not err in overruling the objection in the opening statement, State v. Paige, 446 S.W.2d 798, 805 (Mo.1969), nor in overruling the objections to Officer Stoll's testimony. The evidence was part of one continuous transaction and the state is not required to nicely sift and separate the evidence and exclude testimony tending to prove the crime for which the accused is not on trial. State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877 (1931); See State v. Cox, 508 S.W.2d 716, No. 35,290, St. Louis District, April 16, 1974.

■ Appellant next contends that certain portions of the prosecutor's argument were improper. We need not discuss these contentions for the comments may not again occur. We only refer to the general principle that a prosecutor's remarks must be confined to the record and the legitimate inferences to be drawn therefrom. State v. Baldwin, 358 S.W.2d 18, 27 (Mo. 1962).[7]

Because we believe the instructions were erroneous, we reverse the judgment of conviction and remand the cause.

The judgment is reversed and the cause remanded for further proceedings.

WEIER, J., concurs.

KELLY, J., concurs in separate opinion.

KELLY, Judge (concurring).

I concur in the result reached in the majority opinion of this court. But I feel constrained to comment upon two other points raised by the appellant. First, the majority held the trial court did not err in overruling the objection to the opening statement nor in overruling the objections to Officer Stoll's testimony concerning the charge for which he was arresting the appellant. The second dealt with certain portions of the prosecutor's argument which might occur on retrial unless it is pointed out that this line of argument will not be tolerated.

6. The new criminal instructions MAI–CR 7.-80 require that the verdict-director incorporate paragraph Third: "That [defendant] did not operate such vehicle in good faith in the honest belief that he had the permission of the owner" (or a person he in good faith believed to be the owner and in lawful possession.) On retrial, we assume MAI–CR would be used.

7. And see State v. Jackson, 499 S.W.2d 467 (Mo.1973) and State v. Heinrich, 492 S.W.2d 109 (Mo.App.1973) for a collection of cases and principles relating to argument.

In his opening statement to the jury the prosecutor advised them that his evidence would show by Officer Stoll that after the officer stopped the car and approached the car, he requested appellant's driver's license and when given an outdated application for a duplicate driver's license he returned to the police car and called his dispatcher to have him check on the appellant's driver's license. The dispatcher advised him that no license was issued to the appellant, so he placed appellant under arrest for "improper driver's license," and walked with him to the police car. Once there Officer Stoll had the dispatcher check on the auto license plate and was advised ". . . that the car came back reported stolen on November 3rd, 1972, from the City." The Sergeant then arrested appellant "suspect stealing motor vehicle and various other charges . . ." The prosecutor then proceeded to tell the jury that the appellant was not charged with anything other than operating a motor vehicle without the owner's consent. It was at this point that the counsel for the appellant interjected his objection that the statement of the prosecutor was highly prejudicial and that the appellant was not charged with any crime other than operating without the owner's consent.

During the State's case Sergeant Stoll, over objection that the testimony was hearsay, was permitted to testify relative to the messages relayed to him by the dispatcher concerning the failure of the records to show the issuance of a driver's license to the appellant and the report of the stolen car. It was during the course of this line of inquiry that counsel for the appellant approached the Bench and advised the trial court that the thrust of his objection was directed to the hearsay nature of the testimony and that he was not attacking the probable cause for the arrest.

Despite the constant protests of the prosecuting attorney that the contents of the dispatcher's reports to Sergeant Stoll were not being offered to prove the truth of the statements and were not thereby excluded as hearsay, I am not impressed. The appellant stood before the court charged with operating a motor vehicle without the consent of the owner, § 560.175(1) RSMo 1969, V.A.M.S. The gist of the State's case was that appellant on the 8th day of November, 1972, was operating a 1964 Plymouth automobile in the County of St. Louis without the consent of the owner. The general rule is that evidence which is material and relevant to the issues is admissible; evidence that is irrelevant and immaterial is inadmissible. Reverend Grey, the employee of the owner of the car and the person who had the car in his possession by and with the consent of the owner testified that he had parked the car in front of his house at approximately 9:30 p. m. on the night of November 3rd, 1972, and when his curiosity was aroused by the barking of his dog, he looked out at about 10:00 p. m. and found the car was gone. He further testified that he gave no one permission to move the car and he did not know the appellant.

There was no issue in the case of probable cause for the appellant's arrest; therefore, there was no materiality nor relevancy to the charge for which the police officer arrested the appellant. State v. Tillman, 454 S.W.2d 923, 926[6] (Mo.1970). The fact that the police officer arrested him on a charge is no evidence, not even circumstantial, that the arrestee committed the crime for which he was charged nor any other. To admit this evidence over objection is, in my opinion, violative of the principles of State v. Chernick, 278 S.W.2d 741 (Mo.1955) and State v. Chernick, Mo., 280 S.W.2d 56 (1955). What is particularly deplorable in this case is that the prosecutor could have prosecuted the appellant for the offense of stealing the motor vehicle in the first instance even though the car was originally stolen in the City of St. Louis, under the transportation statute, § 541.070 RSMo 1969, V.A.M.S. However, he chose the easier road and seized upon the opportunity to inject into the case evidence of other offenses, e. g., operating the

motor vehicle without a valid operator's license, stealing a motor vehicle, and "various other charges."

It is the general rule that evidence of other crimes is competent to prove the specific crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and the identity of the person charged with the commission of the crime on trial. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307[2] (Mo. banc 1954). The prosecutor attempted to justify the admission into evidence of the dispatcher's report that the car was stolen and the testimony of the police officer that he, based upon this hearsay information, placed appellant under arrest for stealing the same motor vehicle, on the basis that he was offering the evidence "merely to determine whether or not the motor vehicle was stolen; we are here concerned with the charge of operating; therefore, it is not being used to prove the truth of the statement." After this statement was made in open court, counsel for the appellant requested leave to approach the bench, and after being granted leave, out of hearing of the jury, advised the court it was not the question of the truth of the matter nor was he attacking the lack of probable cause for the arrest. He pointed out to the court that for the prosecutor to come in and say he is not trying to prove the matter asserted is not so, for that is how it would be taken by the jury if admitted; that there was already evidence from Rev. Grey that the car was stolen and he was objecting again on the basis the results of the radio check were hearsay. The prosecutor then retorted: [T]his was part of the res gestae leading up to the arrest itself and that with respect to the hearsay objection appellant was not charged with stealing a motor vehicle, and the evidence was being offered as "simply information along those lines." Since appellant was not charged with theft of the motor vehicle, it was not offered for proof of the statement. The objection was overruled and the police officer testified concerning the contents of the dispatcher's message relative to the car being stolen.

There is some conflict in the cases of this jurisdiction with respect to a police officer testifying to the contents of a radio message between the dispatcher and the police officer. In State v. Young, Mo., 490 S.W.2d 28, the police dispatcher was permitted, over objection, to testify as to information he received relative to a robbery and thereafter broadcast over the police radio. One item included in his broadcast was a license number. Another officer observed an automobile matching the description broadcast, stopped the car and arrested the five occupants thereof, including the defendant. On appeal the defendant contended that the trial court committed prejudicial error in allowing the police dispatcher to relate before the jury the license number which he included in the broadcast on the grounds that it was hearsay because it connected the defendant with the car despite the fact the dispatcher had no personal knowledge on the subject. The state maintained that the information was offered to "explain the basis for the conclusion of the police that they had probable cause to stop the automobile in which defendant was riding." The court, l. c. 30, held that the state's position was not applicable since there had been a pretrial motion to suppress which raised the issue of probable cause and which had been overruled by the court, and the issue was not material nor relevant for the jury, having been finally determined except for appellate review. The court then stated that the appellant was correct that the broadcast of the license number was hearsay with respect to the trial on the merits and the trial court erred in allowing the radio dispatcher to testify before the jury as to the license number; however, such testimony was held not prejudicial in light of other evidence in the case supporting the conviction.

In State v. Barnes, 345 S.W.2d 130, 131[1] (Mo.1961) objection was made to the testimony of two police officers that they had received a radio communication containing the description of a man wanted for a robbery and that shortly thereafter one of them saw the defendant, whom he thereupon arrested. The court in ruling on this point stated that there was no testimony in the record to support the contention that either witness testified that the defendant fit the description of the man wanted, as broadcast by the radio dispatcher, or what the description was. In overruling the point, the court, 1. c. p. 132, said: "The testimony as to having heard such a broadcast tended to explain the subsequent conduct of the witnesses and was properly admissible."

In State v. McRoberts, 485 S.W.2d 70 (Mo.1972) the testimony of a police officer that there came over the police radio a description of a blue Chevrolet with a license plate which was very close to the license plate on the automobile detained was held admissible over objection that what was broadcast over the radio was hearsay. The court, 1. c. 73 said: "This evidence was not introduced for the purpose of proving the truth of the matter asserted (namely, that a blue Chevrolet with that license number was the automobile actually involved in the robbery) but rather for the purpose of further explaining the basis for the officers' conclusion that they had probable cause to search the automobile and its occupants."

Where probable cause of an arrest is not in issue it is difficult for me to find evidence of this nature admissible on the grounds of probable cause. Probable cause for the arrest is directed to the trial court not to the jury. Probable cause for an arrest is only an issue in the preliminary hearing and pre-trial motion stage of criminal proceedings. It has no place in the trial proceedings of a criminal case where the test is reasonable doubt. The fact, if it is a fact, that an arrest was illegal is no defense to a criminal charge and may not be interjected into the trial for that purpose. It may be raised by pre-trial motion to determine whether evidence seized may be validly used in the prosecution of the accused or whether it must be suppressed because seized in violation of constitutionally protected rights or to determine whether it is one of the circumstances which might suppress any confession or admission against interest obtained while the accused was illegally held. In the former instance the issue is directed to the court and not to the jury; whereas in the latter the court must first make a determination of threshold evidentiary admissibility prior to permitting the evidence to be presented to the jury for its consideration.

In State v. Kirkland, 471 S.W.2d 191, 192[2] (Mo.1971) the defendant was charged with robbery in the first degree by means of a dangerous and deadly weapon committed upon a cab driver. As in the case before us, the prosecutor announced to the court that he was not asking a question for the truth of the matter stated therein but merely to determine that it was said and that the police officer relied on it. The objection was overruled with the cautionary instruction to the jury that it was not being admitted "to prove what she [witness] said was true but in order to present some evidence for the jury's evaluation as to what was told to this witness and upon which I am given to understand by the prosecuting attorney that this witness did rely." Relying on the Chernick cases, supra, the court held the evidence inadmissible. The court said: "In short [the police officer's] state of mind was not material nor relevant to any issue in the case before the jury." 471 S.W.2d at 194.

The state relies on State v. McLarty, 467 S.W.2d 58 (Mo.1971) in support of its position that this evidence was admissible because it "tends" to prove that appellant had the intent to operate the motor vehicle

without the owner's consent. In McLarty the police stopped the defendant because the auto had no brake lights. The police asked the defendant for his driver's license and car registration. The defendant produced his driver's license and told the officers the car belonged to a friend of his, but could not furnish the friend's name, address or place of employment. The officers then ran a check on the serial and license numbers on the car and learned the car had been stolen on November 6, 1969. During testimony of one of the officers when he was asked what he did after obtaining the information that the car was stolen, he replied that he advised the defendant that he was under arrest "for stealing over fifty, an automobile" and advised him of his constitutional rights. In ruling on the defendant's contention that the testimony of the officer was evidence of a separate and distinct offense erroneously admitted, the court said, 1. c. 61: "It is perfectly clear to us from the context in which this testimony was given that the reference was to the questionable possession and driving of the subject automobile by the defendant, and not as indicating that defendant had committed another crime."

State v. Taylor, 408 S.W.2d 8 (Mo. 1966), was cited in McClarty as authority for its position. However, a reading of the Taylor case demonstrates that the officer there testified that he placed the defendant under arrest for being a "Fugitive from justice," "a fugitive from St. Louis County." In disposing of this point the court, 408 S.W.2d at 11 [6], said: "We have concluded that the testimony in question did not constitute reversible error. The contention that the ruling was erroneous because the answer implied that defendant was attempting to flee is not preserved for appellate review because that reason was not presented to the trial court at the time the objection was made. . . . Moreover, we do not think the jury would construe the answer as indicating that de-

fendant had committed another crime. We think it is more likely that the jury would consider that the city policeman arrested defendant at the request of the St. Louis County police department as a part of its investigation of the offense in question." In further ruling the court said: "There is another reason why those answers do not require a reversal. The first answer was made before objection. While an objection was thereafter made there was no motion to strike. An objection made after the answer is untimely and, in the absence of a motion to strike the answer, the ruling of the trial court is not preserved for review. . . . The two answers had substantially the same meaning. Since defendant cannot complain of the first answer, the admission of the second answer would be harmless error even if we assume that it was inadmissible."

In my opinion an officer should not on trial be permitted to testify as to the reasons for an arrest other than the offense for which the defendant is charged.

Secondly, I conclude that since this case is remanded for further proceedings, some comment concerning appellant's contention that certain portions of the prosecutor's argument were prejudicial is in order.

In his argument the prosecutor told the jury that appellant was a man who spent twenty-five years living in the north side of the City of St. Louis, a rough neighborhood, a "ghetto, degrading, dehumanizing place to live. One thing it teaches people how to survive, teaches them to be tough and how to survive. . . Ladies and gentlemen, these are street people; Willie is a street person, he is not employed, does not have a job. . . Ladies and gentlemen this is something that is the school of hard knocks except it is even harder down there than most of us have experienced. This is a person who has come up with a good story; he's lived down there, knows how to get by, how to get along and how to make ends meet." At numerous times throughout this argument counsel for the

appellant interposed objections that this argument was outside the record and each time was overruled. His request for a mistrial was denied.

The State cites State v. Baldwin, 358 S. W.2d 18, 27[13] (Mo.1962) where the court said that a state's attorney may make a vigorous argument so long as his remarks are confined to the record and the legitimate inferences to be drawn therefrom. This is the general rule. The state further contends that the remarks complained of were within the evidence and the reasonable inferences to be drawn therefrom. The evidence which the state contends supports this line of argument is the testimony of appellant's sister that he came from the north side of the City of St. Louis, was 25 years of age, did not maintain a permanent residence with her and their older sister, but only lived at home off and on. From this evidence the state would infer that appellant was somewhat transient, "a street person."

The difficulty with this kind of argument is that it is an obvious attempt to infuse racial overtones into the case. This appellant was a Black, and there was no evidence in the case that persons coming from the north side of the City of St. Louis are any more crime prone than those from any other part of the city or the county. But the common knowledge that the northern part of the City of St. Louis is now the residential area of a large number of Black citizens was injected into the case, the reference to the area from whence this appellant came was denominated a ghetto area without any evidence that it was; an area where persons learn to survive at all costs, a school of hard knocks, where "it is even harder than most of us have experienced." Appellant was on trial for operating a motor vehicle without the consent of the owner. He was not on trial because he lived in north St. Louis. Argument of this ilk cannot be allowed.

Therefore, in my opinion, neither of these matters discussed herein should again occur on retrial.